MORGAN, *Respondent,*
*v.*
BALZHISER et al, *Appellants.*
(No. 75-4860, SC 25034)
568 P2d 1354

John H. Horn, of Young, Horn, Cass & Scott, Eugene, argued the cause and filed briefs for appellants.

Richard E. Miller, of Vonderheit, Hershner, Hunter, Miller, Moulton & Andrews, Eugene, argued the cause and filed a brief for respondent.

Before Denecke, Chief Justice, and Holman, Howell, Bryson, Lent, and Linde, Justices.

HOLMAN, J.

## HOLMAN, J.

This is an action by a withdrawing member of a partnership of architects against the remaining members for what is claimed to be the balance owing plaintiff for the value of his interest in the partnership. Defendants appeal from a judgment for plaintiff upon a stipulated set of facts.

Defendants, as partners, designed and supervised the building of a structure for the Eugene Swim and Tennis Club. Thereafter, on November 22, 1968, plaintiff became a member of the firm. On January 22, 1969, the roof of the Eugene Swim and Tennis Club building collapsed. On February 24, 1970, an action for damages for negligence was filed against the members of the partnership at the time of the design and construction of the building. Plaintiff was not included as a defendant. On June 9, 1971, plaintiff gave notice to his partners of his intent to withdraw from the partnership in accordance with the partnership agreement. The withdrawal was accepted by the partnership on July 8, 1971. On August 5, 1971, the remaining partners of the firm notified plaintiff that they were exercising their option under the partnership agreement to purchase plaintiff's interest in the partnership. On September 20, 1971, the accountant for the partnership made a written declaration of the value of plaintiff's partnership interest which was required by the partnership agreement to be as of 60 days from the notice of withdrawal, or August 8, 1971. It included no adjustment or reserve for any damages that might be paid to the Eugene Swim and Tennis Club. In May 1972 defendants settled the action of the Eugene Swim and Tennis Club for a sum which the plaintiff agrees was reasonable.

The sole issue in this dispute is whether defendants are entitled to a deduction from the value of plaintiff's interest for plaintiff's proportionate share of the loss resulting from the collapse of the roof of the building.

The trial court ruled the defendants were not so entitled to a deduction.

■ Defendants contend that pursuant to the provisions of the Uniform Partnership Act, Section 17, which is ORS 68.290, plaintiff is responsible for a proportionate share of the losses of the partnership. The statute is, as follows:

> "A person admitted as a partner into an existing partnership is liable for all the obligations of the partnership arising before his admission as though he had been a partner when such obligations were incurred, except that this liability shall be satisfied only out of partnership property."

Similar provisions are also found in Section 41, subsections (1) and (7), of the Uniform Partnership Act, which is ORS 68.630, subsections (1) and (7). These provisions are:

> "Liability of persons continuing the business in certain cases. (1) When any new partner is admitted into an existing partnership, * * * if the business is continued without liquidation of the partnership affairs, creditors of the first or dissolved partnership are also creditors of the partnership so continuing the business.
>
> "* * * * *.
>
> "(7) The liability of a third person becoming a partner in the partnership continuing the business, under this section, to the creditors of the dissolved partnership shall be satisfied out of partnership property only.
>
> "* * * * *."

Section 17 of the Uniform Partnership Act is accompanied by the following official comment:

> "The present section eliminates the difficulty which arises when a new partner is admitted without liquidation of firm debts. The present theory of the common law is that a new partnership is formed; all the property of the partnership which existed up to the moment of the entrance of the new partner being transferred to the new partnership. The result of this theory is that if the business fails, the creditors who have extended credit after the admission of the new partner have a prior claim on the assets in the business. The inequitable character

of this result has led the courts, where no notice of the change of membership is had by the creditors, to be diligent in finding an assumption of liability on the part of the new partnership of the debts of the old partnership.

"* * * * *.

"The section should be read in connection with section 41, infra. Both sections are based on the principle that where there has been one continuous business the fact that A has been admitted to the business, or C ceased to be connected with it, should not be allowed to cause, as at present, endless confusion as to the claims of the creditors on the property employed in the business; but that all creditors of the business, irrespective of the times when they became creditors and the exact combinations of persons then owning the business, should have equal rights in such property. The recognition of this principle solves one of the most perplexing problems of present partnership law."

Section 41(1) of the Uniform Partnership Act has this official comment:

"The section as a whole deals primarily with the rights of creditors when a new partner is admitted or a partner retires, is expelled or dies, and the business is continued without liquidation of the debts of the partnership dissolved by the change in personnel.

"* * * * *."

It is apparent that these statutes are not concerned with rights among partners but are concerned with the protection of the rights of creditors. It is, therefore, plaintiff's contention that the statutes are irrelevant to our inquiry.

We agree that these statutes, without more, do not dictate a result in this case. Section 17 is found in the chapter concerned with creditors' rights. Section 41 is found in the chapter on dissolution and winding up of the partnership. Therefore, the latter section would be expected to concern itself with, among other things, the relations among the partners; however, it is couched entirely in the language of creditors' rights, and it is that language which is in question here. Even

though the statute says, "* * * if the business is continued without liquidation of the partnership affairs, creditors of the first or dissolved partnership are also creditors of the partnership so continuing the business," the language does not require that the creditors of the first partnership be considered creditors of the second partnership for the purpose of resolving rights between the withdrawing partner and the continuing partnership; the values which are important in an equitable determination of this question have nothing to do with the protection of creditors, which was the purpose of the statutes.

■ Defendants also contend that Section 18(a) of the Uniform Partnership Act, which is ORS 68.310(1), is applicable. The statute reads:

"Rules determining rights and duties of partners. The rights and duties of the partners in relation to the partnership shall be determined, *subject to any agreement between them,* by the following rules:

"(1) *Each partner shall* be repaid his contributions, whether by way of capital or advances to the partnership property and *share equally* in the profits and surplus remaining *after* all *liabilities,* including those to partners, *are satisfied; and must contribute towards the losses,* whether of capital or otherwise, *sustained by the partnership* according to his share in the profits.

"* * * * *." (Emphasis added.)

This statute has no application. Its only relevance is the provision that partners may agree among themselves concerning the division of profits and losses. The partners in this case had an agreement among themselves that contained, as will be seen, substantially the same provisions as those encompassed in the statute.

It is defendants' contention that the provisions of the partnership agreement require that plaintiff be responsible for a proportionate share of the loss. This agreement contains the following provisions:

"* * * * *.

"* * * *[F]or purposes of* profit allocation and *valua-*

tion of a partner's interest upon withdrawal, records shall also be maintained on an accrual basis.

"* * * * *.

"The net profits of the partnership shall be divided and the net losses of the partnership shall be borne as follows:

"* * * * *.

"* * * All * * * profits or losses shall be allocated as follows:

| | |
|---|---|
| Thomas A. Balzhiser | 25% |
| Richard R. Rhodes | 25% |
| Darrell L. Smith | 25% |
| Christopher C. Morgan | 25% |

"* * * * *.

"* * * Withdrawal: Any partner may withdraw from the partnership by giving sixty (60) days' written notice of his intention to do so and at the end of such sixty (60) day period the interest of the withdrawing partner shall be terminated but the partnership business shall be continued as a partnership among the other parties. Upon such withdrawal then the interest of such partner including his capital account may be purchased by the remaining partners under the following terms and conditions:

"* * * * *.

"* * * Purchase Price: *The purchase price for the interest of the withdrawing* or expelled *partner shall be his capital account,* including unbilled work in progress, *on the accrual basis* at the end of the last fiscal year of the partnership *with adjustments* through the last day of the calendar month in which such withdrawal becomes effective *for* profits or *losses* and capital withdrawals or salary advances to the partner during such year. *The certified public accountant for the partnership shall make such determinations and the same shall be binding upon all the partners.*

"* * * * *.

"* * * Adjustments. *The settlement* of a capital account as herein provided *shall not include* any *unknown* or *undisclosed* liabilities, *nor claims for acts or omissions prior to* the date of *withdrawal* but *not asserted prior to* such *settlement, nor* shall it *operate as a discharge of* any

[ 349 ]

*liability of* the *withdrawing* partnership [*partner*] for any *matter not covered* by such settlement. The partnership shall retain all causes of action against the partner arising from breach of this agreement or by operation of law. *In* the *event* the *amount* of any damages or offsets hereunder are *not ascertained,* the *partnership may retain* an *amount* estimated *to satisfy the same* and *when liquidated,* the amount *may be offset* against all sums due to the withdrawing partner. If an offset is not available the partnership shall have a cause of action for recovery of any amounts due hereunder.

"* * * * *." (Emphasis added.)

In accordance with the "Purchase Price" provisions, the capital account of each partner, for present purposes, is kept on an accrual basis. In addition, the accountant for the partnership makes the determination concerning which losses require adjustment of a partner's capital account when such account is computed for the purpose of withdrawal. The discretion to make these adjustments is limited, however, by the provisions of the section entitled "Adjustments."

This section of the agreement provides that the settlement of the capital account shall not include (1) unknown or undisclosed liabilities, nor (2) claims for acts or omissions prior to the date of withdrawal but not asserted prior to settlement. The claim in question here was neither unknown nor unasserted. However, the language implies that where the reverse is the case and the claim is known and asserted (which it was), it should, if it is an otherwise proper claim, be taken into consideration in the settlement of the capital account. The settlement does not operate as a discharge of any liability of the withdrawing partner for any matter not covered. The paragraph also provides that, in the event the amounts of the damages or offsets are not ascertained, the partnership may retain sums sufficient to satisfy the same. These provisions are not entirely consistent with one another.

However, none of the above provisions, including those under "Purchase Price," as well as under "Ad-

justments," says anything concerning *the nature of the loss or liability* which enables one to determine whether a particular loss or liability of the partnership constitutes a proper offset against plaintiff's capital account for the benefit of the other partners. We can all think of circumstances in which a partner has *apparent* authority and therefore binds a partnership, but the resulting liability would normally be charged, as among the partners, to the acting partner's capital account alone. As an illustration, let us suppose a partner had the ostensible authority to negotiate a loan to the partnership but does not devote the proceeds to partnership purposes. The partnership would be responsible for repayment of the loan, even though it had not received any benefit from the proceeds. But the partnership agreement would not be construed to require that, as among the partners, their capital accounts should be charged equally, just because the loan was a partnership obligation, unless the terms of the agreement clearly required that result.

██ Partners may agree among themselves to any valuation formula they wish; the courts will not disregard that agreement merely because it produces, in a particular case, a result that appears inequitable. Here, however, the valuation formula is not spelled out in detail. The agreement does not purport to define the specific "liabilities," "damages," or "offsets" which are to be charged against the capital account of a withdrawing partner. The resolution of uncertainties has been delegated to the accountant. In the case before us the accountant's valuation is both reasonable under the relevant provisions of the agreement and equitable in light of the particular circumstances. It was binding on defendants, and the trial court's judgment for plaintiff was proper.

Defendants assert that the accountant's valuation was not binding because at the time of its determination the proper offset could not be ascertained since the loss was not then known. The accountant was operating, for present purposes, upon an accrual basis,

and although the amount of the loss was not ascertainable, the claim had been asserted and was in litigation. Under such a circumstance, any accountant setting the value of plaintiff's capital account upon an accrual basis for the purpose of its purchase by the remaining partners, would have at least footnoted or otherwise mentioned the outstanding contingent liability had it been his intention that it be taken into consideration in the ultimate disposition of the matter.[1]

The judgment of the trial court is affirmed.

---

[1] See Accounting Research Bulletin (ARB) *Bulletin No. 50,* "Contingencies," ¶¶ 1, 2, and 5, Committee on Accounting Procedure, American Institute of Accountants, October 1958.