Argued and submitted December 3, 1982, affirmed June 22, reconsideration denied
September 16, petition for review denied October 18, 1983 (295 Or 773)

## ST. PAUL FIRE AND MARINE
## INSURANCE COMPANY et al,
*Appellants,*

*v.*

## SPEERSTRA et al,
*Respondents.*

## (A7809-15242; CA A23712)

666 P2d 255

James M. Callahan, Portland, argued the cause for appellants. With him on the brief was Landis, Aebi & Bailey, P.C., Portland.

William L. Hallmark, Portland, argued the cause for respondents. With him on the brief were Stephen F. English, and Lang, Klein, Wolf, Smith, Griffith & Hallmark, Portland.

Before Buttler, Presiding Judge, Joseph, Chief Judge, and Warren, Judge.

JOSEPH, C. J.

## JOSEPH, C. J.

This is a legal malpractice case arising out of the defense of a medical malpractice case. In the latter case, defendant attorneys were retained by St. Paul Fire and Marine Insurance Company (St. Paul) in 1974 to represent its insured, Salem Hospital, in defense of consolidated medical malpractice actions brought by Ned and Opal Crippen against the hospital and five physicians. The Crippens settled with four of the doctors for $550,000, took a voluntary non-suit against the fifth doctor and proceeded to trial against the hospital as the sole defendant. The jury returned a verdict in favor of the Crippens, and judgments were entered against the hospital totalling in excess of $800,000. Defendant attorneys filed motions for judgment notwithstanding the verdict and a new trial. The motions were denied, and defendants filed a notice of appeal. The appeal was dismissed, because the notice was not timely filed.

On September 19, 1978, St. Paul and Salem Hospital filed a complaint against defendants for their alleged negligence in the handling of the Crippen case. They alleged that defendants were negligent in failing to convey a $75,000 settlement offer to the Crippens' attorney and in failing to file a timely notice of appeal. Both parties moved for partial summary judgment, raising the issue whether the appeal would have been successful had the notice been timely filed. The judge granted defendants' motion and denied plaintiffs'.

On August 7, 1980, defendants moved for summary judgment with respect to the remaining allegation of negligence — the failure to convey the $75,000 settlement offer — on the ground that the action was barred by the statute of limitations. That motion was denied. On February 5, 1981, plaintiffs filed an amended complaint based on the failure to convey the $75,000 offer and also on the failure to convey an earlier $50,000 offer and related allegations of negligence. Defendants moved to dismiss the new allegations in that complaint on the grounds that they did not relate back under ORCP 23C and were barred by the statute of limitations. The motion was granted. Plaintiffs' motion for reconsideration of that order was denied, and they petitioned the Oregon Supreme Court for a writ of mandamus, which was also denied. They then moved

for, and were granted, leave to file a second amended complaint based on the $50,000 offer, in which they substituted new allegations of negligence. Defendants again moved to dismiss the allegations on statute of limitations grounds. The motion was granted. Plaintiffs chose not to replead, and judgment was entered for defendants. Plaintiffs appeal.

The first three assignments of error deal with whether the allegations in the amended pleadings relate back to the time of the filing of the original complaint for purposes of the statute of limitations.[1] Defendants contend that, even if plaintiffs were to succeed on this issue, the judgment should nevertheless be sustained, because their August 7, 1980, summary judgment motion based on the statute of limitations against the *original* complaint should have been granted. Defendants raise this issue by "cross-assignment of error," rather than by cross-appeal. When a respondent seeks to sustain a judgment on a ground which the trial court allegedly erroneously rejected, he need not cross-appeal so long as he unequivocally makes the alleged error an issue on appeal. *Artman v. Ray,* 263 Or 529, 532-534, 501 P2d 63, 502 P2d 1376 (1972). Defendants' "cross-assignment" serves that purpose.

The denial of a motion for summary judgment is not an appealable order. *See, e.g., Hoy v. Jackson,* 26 Or App 895, 554 P2d 561, *rev den* (1976). Under some circumstances, however, a denial may be reviewable. *See Cochran v. Connell,* 53 Or App 933, 632 P2d 1385 (1980). Final judgment was eventually entered in defendants' favor here, and they therefore had no reason or means to assert the denial of their summary judgment motion as error. A trial was never held, and so a motion for a directed verdict on the grounds now urged by defendants was precluded. Thus, because of the peculiar procedural posture of this case, we will review this alleged error.

The chronology of events relevant to the issue of whether plaintiffs' original complaint was filed within the two-year statute of limitations provided by ORS 12.110(1) follows:[2]

---

[1] Plaintiffs assign as error the granting of defendants' motions to strike the new allegations in their amended pleadings and the denial of their motion for reconsideration.

[2] ORS 12.110(1) is the applicable statute of limitations in a legal malpractice action. *US Nat'l Bank v. Davies,* 274 Or 663, 548 P2d 966 (1976).

| Date | Event |
| --- | --- |
| July 9, 1976 | Jury verdict rendered in Crippens' favor in medical malpractice case. |
| July 15, 1976 | Judgment entered. |
| July 23, 1976 | Defendants filed motions for judgment n.o.v. and for a new trial. |
| September 7, 1976 | Post-trial motions deemed denied by operation of law. Former ORS 17.615.[3] |
| September 15, 1976 | Post-trial motions argued and denied.[4] |
| October 7, 1976 | Time for filing notice of appeal expired. ORS 19.026. |
| October 16, 1976 | Defendants filed notice of appeal. |
| November 9, 1976 | Appeal dismissed. |
| September 19, 1978 | Original complaint in legal malpractice case filed. |

The statute of limitations begins to run at the time the cause of action accrues. ORS 12.010. In a legal malpractice case, the statute starts running when the malpractice is discovered (or should have been discovered) *and* harm has occurred. *US Nat'l Bank v. Davies,* 274 Or 663, 548 P2d 966 (1976). The issue is when plaintiffs' cause of action for defendants' failure to convey the $75,000 settlement offer accrued.

Defendants contend that the action was not timely brought, as a matter of law, because by September 19, 1978,

---

[3] The trial court was without jurisdiction to hear the motions on that date by virtue of former ORS 17.615, which provided in part:

"The motion shall be heard and determined by the court within 55 days from the time of the entry of judgment, and not thereafter, and if not so heard and determined within said time, the motion shall conclusively be deemed denied."

*See* ORCP 64F; *see Ernst v. Logan,* 208 Or 449, 302 P2d 220 (1956).

[4] Apparently, the motion was set for hearing beyond the 55-day deadline mistakenly.

more than two years had elapsed since plaintiffs suffered harm — that is, the July 15, 1976, judgment. Plaintiffs were aware prior to the jury verdict on July 9, 1976, of defendants' negligence — that is, that the $75,000 settlement offer had not been conveyed. Defendants argue that, because of that, July 15, 1976, is the latest starting point for the running of the statute of limitations. Plaintiffs argue that, under the "continuous treatment rule," it was not until dismissal of the appeal in the Crippen cases on November 9, 1976, and termination of the attorney-client relationship, that the damage caused by defendants' negligence became irremedial.

■■      However, the time at which the *extent* of damages becomes certain is not the starting point for the running of the statute of limitations. In *Brown v. Babcock,* 273 Or 351, 540 P2d 1402 (1975), the plaintiffs sued the defendant attorneys for their alleged negligent defense of a suit to foreclose a land sale contract. The plaintiffs contended that the suit was timely brought as a matter of law, because it was filed within two years after the date of entry of the final decree of strict foreclosure. They maintained that it was not until that date, when they lost their equitable interest in the land they were purchasing, that they suffered any damage. The Supreme Court disagreed, saying that it was a question of fact whether the plaintiffs suffered any harm at the time of the entry of the interlocutory decree of foreclosure or at the expiration of the period of redemption, both of which occurred before the entry of the final decree.[5] Here, the fact that it was not until the time of the dismissal of the appeal in the Crippen cases that it was certain that plaintiffs had to pay an $800,000 judgment does not mean that plaintiffs suffered no *harm* prior to that time.

Neither party contends that the failure to convey the settlement offer could not constitute negligence, that there was no evidence of a causal connection between the alleged negligence and the harm or that, at the time of the entry of the judgment on July 15, 1976, plaintiffs could not have brought an action for legal malpractice against defendants. Even if the appeal had been successful and a more favorable verdict had

[5] The court said the evidence was in conflict whether, at the time of the interlocutory decree, plaintiffs had, or could have raised, sufficient funds to pay the amount required by the terms of the interlocutory decree. *Brown v. Babcock, supra,* 273 Or at 355-356.

been rendered in plaintiffs' behalf (as defendants or insurers in the medical malpractice case) on retrial, plaintiffs nevertheless suffered harm at the time of the entry of the judgment. At that time, they were required to pay the $800,000 judgment or the cost of an appeal (and the cost of a new trial if the appeal were successful). We conclude that, as a matter of law, plaintiffs had incurred actionable harm by the time of the entry of the judgment.[6] Thus, defendants' motion for summary judgment should have been granted. Because of our disposition of this question, plaintiffs' first three assignments of error are moot.[7]

---

[6] In *US Nat'l Bank v. Davies, supra,* the court said that the filing of provisional actions in a legal malpractice action when the harm to the plaintiff is less than probable is to be discouraged. There the plaintiffs' decedent was advised by his attorneys to accept, and did accept, corporation trust funds, which was in violation of the law and his fiduciary duty to the corporation. The corporation sued the decedent about that illegal acceptance. At the time the corporation's complaint against him was filed, it was *possible* that he might prevail in that action. The court said that it was not until it appeared likely that he would lose the case that his cause of action for legal malpractice accrued. In other words, he had incurred no harm until his liability in the corporation's action became *"probable."* Of more significance to the court was the fact that, had the decedent filed his legal malpractice action at the time the corporation's action was brought against him, he would have been in an inconsistent position, claiming in the corporation's case that he acted in conformance with the law and claiming in the malpractice case that he had not.

In contrast, here, plaintiffs would not have been in an inconsistent position had they brought suit against defendants at the time of the entry of judgment on July 15, 1976. Moreover, their harm was more than probable at that time. They either had to pursue an appeal or pay the $800,000 judgment.

[7] Plaintiffs' urge us to adopt the "continuous representation rule" that a cause of action for legal malpractice does not accrue until the termination of the representation which gave rise to the claim or, as they put it in their reply brief, "when the attorney's error becomes final and irremedial [sic]." The rule is a supposed analogue of the medical malpractice continuous treatment rule *(see e.g., Wilder v. Haworth,* 187 Or 688, 691, 213 P2d 797 (1950)), which in turn is based on the continuing tort concept. The rule urged has never been applied in Oregon, although it was broached in *Brown v. Babcock,* 279 Or 351, 356, 540 P2d 1402 (1975). It apparently came into being in two New York cases *(Wilson v. Econom,* 56 Misc. 2d 272, 288 NYS 2d 381 (1968); *Siegel v. Kravis,* 29 App Div 2d 477, 288 NYS 2d 831 (1968)) and was applied out of concern that, under the facts of those cases, the rule we apply here could permit the attorneys to protect their own interest at the expense of the client's.

Proponents of the rule *(see* Mallen and Levitt, *Legal Malpractice* § 391 (2d ed 1981)) apparently would extend the rule beyond the continuing tort, fraud and concealment context of medical malpractice to a general rule for *all* legal malpractice claims in order "to avoid unnecessarily disrupting the attorney-client relationship." *Mallen and Levitt, supra,* at 460. However, in this case plaintiffs knew of the malpractice by the time of the verdict and knew of the harm caused them. Any analogy to "continuous treatment" is very weak and is unnecessary to apply protectively in this case. The conflict of interest between the plaintiffs and the defendants was clear when the judgment was entered. That the plaintiffs chose to permit defendants'

■    In plaintiffs' remaining assignment of error, they argue that, had an appeal been timely filed in the Crippen cases, it would have been successful and that therefore the judge erred in denying their summary judgment motion and in granting defendants'.[8] The issue is whether plaintiffs suffered any damages as a result of defendants' failure to file their notice of appeal on time. A legal malpractice action is like any other negligence action in that the plaintiffs must prove a duty, breach of that duty, causation and damages. *Harding v. Bell,* 265 Or 202, 508 P2d 216 (1973). When the alleged malpractice concerns a failure to appeal, damages can be recovered only if it is shown that the appeal would have been successful, *see Bryant v. Seagraves,* 270 Or 16, 526 P2d 1027 (1974), and that is a question of law. *See Chocktoot v. Smith,* 280 Or 567, 574, 571 P2d 1255 (1977).

In support of their partial summary judgment motions, both parties submitted arguments in the form of appellate briefs. Plaintiffs' brief contained what they claimed would have been the successful assignment of error and argument on appeal: the trial court's refusal, at the close of the evidence, to strike two allegations of negligence.

In their complaint, the Crippens had alleged:

"The defendant Salem Memorial Hospital was negligent in one or more of the following particulars:

"a.   In failing to notify plaintiff's treating physician of plaintiff's deteriorating neurological condition on the night of August 29-30, 1972;

"b.   In failing to notify plaintiff's treating physician of his deteriorating neurological condition on September 15 and 16, 1972;

"c.   In failing to administer antiobiotics ordered by plaintiff's treating physician;

representation to continue past that point, and that defendants failed to act appropriately in the face of that conflict (*see, e.g.,* DR 5-101 (A)) is not controlling on the running of the statute of limitations. Whether the continuous representation rule is to be adopted, and what should be its scope, are not necessary to be decided here.

[8] Plaintiffs' original complaint pleaded but one cause of action for negligence. The failure to tender the settlement offer and the failure timely to file the appeal were pleaded as acts of negligence. Although it is apparent that the acts were separately actionable and should have been separately pleaded (ORCP 16B), no motion to require that was filed. The parties, however, have treated the complaint as pleading separate claims, and we will do the same.

"d. In failing to determine whether medications being added to plaintiff's intravenous feedings were to be continued after plaintiff was switched from intravenous to oral tube feedings on August 28, 1972."

At the close of the evidence at the Crippen trial, the defendant attorneys moved to strike the first two allegations on the ground that there was no evidence that the hospital's failure to notify the treating physician of Mr. Crippen's deteriorating condition was causally related to his injuries — that is, there was no evidence that the physician would have responded to the notification in a manner which would have prevented, or at least reduced, the extent of Mr. Crippen's injury. (They now contend, on *this* appeal, that there was sufficient evidence to make the question one for the jury.)

■ An allegation of negligence that is not supported by some evidence should be withdrawn from the jury. *Martin Engineering v. Opton,* 277 Or 291, 295-296, 560 P2d 617 (1977); *Alvarez v. Great North. Railway Co.,* 261 Or 66, 75-77, 491 P2d 190 (1971), *reh den* (1972). The evidence is to be viewed in the light most favorable to the party having the verdict. *Goodrich v. Ford Motor Co.,* 269 Or 399, 401, 525 P2d 130 (1974). However, because the record in the Crippen cases is not before us, and there is no factual dispute, we summarize the facts from plaintiffs' "appellate brief."

On August 3, 1972, Mr. Crippen underwent surgery on his cervical spine. During the operation, his pharynx was lacerated, contaminating the surgical area. The laceration was repaired, but the original surgical procedure was discontinued. He was released from the hospital but was readmitted with an acute infection on August 24, 1972. Surgery was performed that day. Antibiotics were added to his intravenous feedings. On August 28, he was "doing beautifully" and the feedings were stopped. However, although the physician who discontinued the feedings did not intend that administration of antibiotics stop, he did not specify that in his order.

Mr. Crippen was without antibiotics from midday on August 28 to August 30. His fever returned in the evening of August 28, and, at 4 a.m. on August 29, he complained of tingling and numbness in his legs. During the evening hours of August 29 and the early morning hours of August 30, his neurological condition grew worse. He began feeling numb below

the waist; the pain in his neck and shoulders increased; his grip became weak and his hands numb; finally, he was unable to walk, grip or urinate. The hospital staff did not inform Dr. White, Mr. Crippen's treating physician, of the deterioration. When Dr. White saw Mr. Crippen later in the morning on August 30, he immediately performed emergency surgery to remove a "presumed epidural abscess" that was placing pressure on the spinal cord.

By September 14, 1972, the infection appeared to be gone. However, during the evening hours of September 15 and the early morning hours of September 16, his neurological condition again showed signs of deterioration. His ability to use his left arm and leg declined significantly, and his right arm and leg were weaker than they had been the previous day. Again, the hospital staff did not notify Dr. White of that deterioration. When Dr. White saw him later in the day on September 16, he again performed emergency surgery to relieve the renewed pressure on the spinal cord.

As a result of the pressure on his spinal cord, Mr. Crippen suffered permanent quadraplegia. Plaintiffs admit that if Dr. White had performed either of the emergency surgeries at the time the hospital staff first noted the deterioration of the neurological condition, Mr. Crippen's injury would not have been so severe. They further admit that the hospital staff's failure to notify Dr. White of the signs of deterioration fell below the applicable standard of care; but they argue that there was no showing that this failure contributed to Mr. Crippen's injury. They claim that there is no evidence to show that Dr. White would have operated earlier than he did had the hospital staff not breached its duty.

Dr. White was not asked what he would have done had he been contacted when Mr. Crippen's condition deteriorated. Plaintiffs claim that the jury was not free to presume that he would have operated earlier than he did. Defendants argue that, if notice had been given and Dr. White had not operated, he would have been negligent, and the jury would have been free to presume, under former ORS 41.360(1),[9] that

---

[9] Former ORS 41.360(1) created a disputable presumption:

"A person is innocent of a crime or wrong."

he would not have been negligent. Proof of causation in a medical malpractice case may be circumstantial. *Mayor v. Dowsett*, 240 Or 196, 211, 400 P2d 234 (1965). Thus, Dr. White's failure to testify about what he would have done had he been notified did not preclude a showing, by circumstantial evidence, that he would have operated earlier than he did.

It is clear that both surgeries were performed on an emergency basis, the emergency arising from the pressure on the spinal cord, which, in Dr. White's words, "is a very sensitive organ which is intolerant of being smashed." He also said that the sooner the pressure is relieved on the spinal cord, the better is the chance of a patient's recovery. He said that, if a patient's condition deteriorates, he would expect the hospital staff to notify him, presumably to take steps to prevent further deterioration. Dr. Cross, the expert witness for the Crippens, testified that, based on reasonable medical probabilities, surgery was indicated at the times that notice of Mr. Crippen's condition should have been given.

Given this evidence and plaintiff's admission that earlier surgery would probably have resulted in something other than permanent quadraplegia, a jury could reasonably infer that Dr. White would have performed surgery earlier than he in fact did had he known of the symptoms indicating spinal cord involvement at the times he should have known.

The trial court in the Crippen's cases did not err in denying the motion to strike the two allegations of negligence; the ruling would have been upheld on appeal. Plaintiffs have therefore not shown that they suffered any damage as a result of defendants' failure timely to file a notice of appeal.

Affirmed.