Argued and submitted July 8, reversed and remanded in part; otherwise affirmed December 8, 1993, Rawlins' reconsideration denied and Smith's reconsideration denied January 26, both petitions for review withdrawn May 19, 1994 (319 Or 150)

Richard T. RAWLINS,
*Appellant,*

*v.*

Ronald L. BOHY,
*Defendant,*

*and*

Bruce D. SMITH,
Brad G. Garber and Michael B. Dye,
*Respondents.*

(91C-11446; CA A76570)

865 P2d 395

Argued and submitted July 8, 1993.

Gary M. Georgeff argued the cause for appellant. With him on the briefs was McGaughey & Georgeff.

O. R. Skopil, III argued the cause for respondents Brad G. Garber and Michael B. Dye. On the brief were Frank Moscato and Moscato, Byerly & Skopil.

Robert H. Grant argued the cause and filed the brief for respondent Bruce D. Smith.

Before Warren, Presiding Judge, and Edmonds and Landau, Judges.

EDMONDS, J.

### EDMONDS, J.

Plaintiff brought this legal malpractice action against defendants,[1] alleging that they were negligent in their representation of him in a workers' compensation claim. His claim against defendants Bohy and Dye is still pending in the trial court and is not before us on appeal. The trial court granted partial summary judgments and entered judgments pursuant to ORCP 67B in favor of defendants Smith and Dye on plaintiff's second claim for relief and in favor of defendants Garber and Dye on his third and fourth claims. Because Dye's liability is wholly dependent on the alleged negligence of the other defendants, we will discuss only the claims against Smith and Garber. Plaintiff argues that the trial court improperly granted the summary judgments, because issues of material fact exist, and assigns error to the trial court's denial of his cross-motions for partial summary judgment on the issue of liability against Garber. ORCP 47. We affirm in part and reverse in part.

Bohy represented plaintiff in his claim before the Workers' Compensation Hearings Division. After the referee denied plaintiff's claim, Smith filed a timely request for review by the Workers' Compensation Board on behalf of plaintiff. Plaintiff alleges that, because Smith failed to dispute certain findings made by the referee and to argue certain theories before the Board, the Board erroneously adopted the referee's findings and conclusions. Garber represented plaintiff on judicial review of the Board's order in this court. However, he failed to serve the Board with a copy of the petition, which resulted in our dismissing it. Plaintiff alleges that, but for that failure, we would have reversed the Board's decision and would have found that he was within the course of his employment at the time he was injured.

■ In a legal malpractice action, the plaintiff must demonstrate that, except for the negligence of his attorney, the plaintiff's claim would have succeeded. *St. Paul Fire & Marine Ins. v. Speerstra*, 63 Or App 533, 540, 666 P2d 255, *rev den* 295 Or 773 (1983). The trial court ruled that, as a

---

[1] All claims against defendant Dye are based on the doctrine of respondeat superior. There is no judgment against Bohy, and he is not properly designated as a respondent on the appeal. Accordingly, we have amended the case caption to show Bohy as a defendant.

matter of law, the omissions by Smith were immaterial to the Board's ruling. To understand the court's reasoning, we take the facts as found by the referee:

"On the date of injury, claimant was the president and general manager of Rawlins Realty, Inc., located in Salem, Oregon. As such, he was responsible for the operation of the business, including administrative and financial concerns. On the date of injury, claimant's mother, father, and two brothers * * * were on the Board of Directors of the corporation; claimant was not. Claimant made all decisions regarding the business. He relied heavily on his father's expertise and he sought his father's advise [*sic*] on a regular basis.

"Claimant's father lived in Salem just down the road from claimant's residence, and he maintained an office adjacent to the Rawlins Realty premises for his own affairs. Claimant discussed business with his father almost daily at various locations, including at breakfast meetings, while playing basketball and tennis, at the business office, and by phone.

"For several months prior to the date of injury, the business had been in financial trouble. The office was approximately three months behind in the payment of phone and advertising bills, and vendors were threatening to terminate services. *Claimant had a line of credit from which he could obtain a loan.* However, in this instance, as in others, he intended to ask his father for a loan first.

"The business was also suffering the effects of the depressed real estate market, and claimant had worked on a commission reorganization plan to better meet the competition. He intended to implement the plan on October 1, 1987.

"In April, 1987, a ranch near John Day, Oregon, was purchased from King Williams, in the name of Rawlins Family Trust. * * * The ranch, operated by brother Pete, was intended to be a recreational facility for the family. In partial consideration for the property, the titles to three rental properties * * * were transferred free and clear to King Williams. Although it was not a priority to King Williams, he and claimant had, on several occasions, by phone and in person, discussed the listing of the properties for sale through Rawlins Realty.

"King Williams * * * sold the ranch's 700 cattle which had been grazing on [the ranch]. The cattle were to be loaded onto trucks on Monday, September 14, 1987. Early in the preceding week, Pete had called claimant from the ranch and

asked him to come to the ranch the following weekend to help spot and chase cattle for loading on Monday. Claimant was the only family member available who could fly the plane which was registered to Tim Rawlins and maintained by Rawlins Realty Corporation. Claimant agreed, and the event developed into a family gathering * * *.

"Claimant decided it would be a good opportunity to request a loan from his father for immediate operating expenses for Rawlins Realty, Inc.,[2] to discuss the proposed commission split reorganization plan, and to discuss a presentation claimant was going to make to an insurance company * * *. Claimant also intended to firm up an agreement with King Williams for listing the three Salem properties.

"* * * * *

"Claimant and [a friend] arrived at the ranch early Saturday morning. They spent Saturday and Sunday, September 12 and 13, with Pete, claimant's father and King Williams, spotting and chasing cattle. Claimant made several flights on Saturday and Sunday to spot cattle * * *.

"Claimant discussed business with his father while the two were riding horses on Saturday and Sunday. On Sunday, * * * claimant also presented the figures on the reorganization plan * * *.

"During the weekend, claimant also discussed with Mr. Williams the listing of his three properties and the two agreed on asking prices. No listing agreement was prepared or signed, however.

"After spotting cattle early Monday morning, claimant flew to the airport to top off the fuel tanks in preparation for the flight back to the Willamette Valley where the plane would be serviced and kept for the winter. He also had a short discussion with his father in which his father agreed to loan him the money to cover the corporation's immediate operating needs. His father did not actually give him the money at that time or indicate when or how it would be paid.

"Claimant and [his friend] departed the ranch by plane * * * on September 14, 1987. Shortly after takeoff, the plane crashed and claimant was injured." (Emphasis supplied.)

---

[2] Plaintiff testified that, when he made this trip, his father was at the ranch. Furthermore, the father testified that he had spent a lot of time at the ranch in the months before plaintiff's trip.

Relying on *Magee v. SAIF*, 48 Or App 439, 617 P2d 295, *rev den* 290 Or 211 (1980); *Brown v. SAIF*, 43 Or App 447, 602 P2d 1151 (1979), *rev den* 288 Or 335 (1980); and *Rosencrantz v. Insurance Service*, 2 Or App 225, 467 P2d 664 (1970), the referee said:

> "The law regarding the dual purpose doctrine is clear. If the trip during which the injury occurred involves the performance of a service for the employer which would have caused the trip to be taken by someone even if it had not coincided with the personal mission, the injury is compensable."

Applying the dual-purpose doctrine, she concluded:

> "I find from claimant's credible testimony that he was going to the ranch for the primary purpose of spotting and chasing cattle with his family and friends, and that, knowing that his father and King Williams would be present, he seized the opportunity to prepare some business topics for discussion with them. The trip would have been made in the absence of any business purpose. I do not find from the testimony, however, that the trip would have had to have been made by someone had the claimant's personal mission been canceled.

> "I conclude, therefore, that the claim is not compensable under the dual-purpose doctrine."

The basis for plaintiff's malpractice claim against Smith is two-fold. First, he argues that Smith negligently failed to challenge the referee's finding that plaintiff "had a line of credit from which he could obtain a loan," and that Smith "should have raised grounds for compensation based on the use of the airplane." Because we hold that the issue of whether plaintiff had an existing line of credit was relevant to the Board's inquiry, we do not decide the issue concerning the use of the airplane.

■■ A jury could find that Smith had a duty to dispute all relevant findings made by the referee that were based on conflicting evidence, and that if he had done so, it would have changed the Board's decision. Whether a fact is relevant depends on whether it has the tendency to make the existence of any fact that is of consequence to the determination more probable or less probable than it would be without the evidence. OEC 401. Under the dual-purpose doctrine, the fact that is of consequence to the determination is whether plaintiff would have made the trip if the personal mission, the

cattle round-up, had been canceled. Whether plaintiff had exhausted his line of credit was a fact that would make it more probable or less probable that plaintiff would have made the trip regardless of the round-up. The company's managing broker testified that, in the past, plaintiff had used a line of credit to cover the company's bills. Plaintiff testified that at the time of the trip, his personal resources had been exhausted. There is evidence that the business' advertising and telephone services were about to be discontinued because of lack of funds. From this evidence, the Board could have concluded that plaintiff urgently needed a loan from his father, which would have necessitated the trip regardless of any personal mission. Because the Board reviews the referee's order *de novo*, a trier of fact could find that it was negligent for Smith not to have argued that evidence to the Board, and that his negligence would have affected the decision on its merits. For this reason, the trial court erred when it granted summary judgment to Smith.

Plaintiff's basis for his malpractice claim against Garber is that, had review occurred, we would have reversed the Board's decision on the ground that the Board applied the incorrect legal test, that its finding that there was no urgent need for plaintiff to go to the ranch was not supported by substantial evidence, and that its conclusion was contrary to the law. Garber's liability for malpractice must be assessed on the record before the Board, not on how the record might have appeared had Smith made additional arguments. Otherwise, Garber would be held to a standard of care based on a record that was different from the record on which he filed the petition for judicial review. Plaintiff argues that the Board's conclusion that his "primary purpose" for going to the ranch was to spot cattle demonstrates that the Board applied the wrong legal test:

> "The [Board's] use of the rejected 'primary' purpose test was an error of law. That error was critical, as demonstrated by the fact that the [Board] analyzed all of the business aspects of the trip from the viewpoint of whether they were 'urgent,' a 'necessity,' or an 'immediate priority.' The [Board] never considered that some employee of Rawlins Realty Co., at some time, would ultimately have had to attend to all of the business aspects of the trip."

■ ■    Plaintiff is correct that we have held that it is improper to characterize the dual-purpose test as declaring that the trip is a business trip if the primary purpose of the trip is for business. In *Rosencrantz v. Insurance Service, supra*, we quoted 1 Larson, *Workmen's Compensation Law* 294.3, § 18.13 at 294.10-294.11 (1968):

> "It is inaccurate and misleading to call this test, as sometimes has been done, the 'dominant purpose' test, or to paraphrase it by saying that the trip is a business trip if the 'primary' purpose is business. Judge Cardozo used no such language. He said it was sufficient if the business motive was a concurrent cause of the trip. He then defined 'concurrent cause' by saying that it meant a cause which would have occasioned the making of the trip even if the private mission had been canceled. One detail must be stressed to make this rule complete: It is not necessary, under this formula, that, on failure of the personal motive, the business trip would have been taken by this particular employee at this particular time." 2 Or App at 228-29.

However, when the Board's reference to plaintiff's "primary purpose" is read in context, it is evident that it applied the proper test.

Next, we examine the record to determine whether the facts as found by the Board are supported by substantial evidence and whether the Board correctly applied the law to those facts. Had plaintiff sought review, we would have been bound by the Board's findings if there was substantial evidence to support them. "Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding." ORS 183.482(8)(c).

> "That is, the court must evaluate evidence against the finding as well as evidence supporting it to determine whether substantial evidence exists to support that finding. If a finding is reasonable in light of countervailing as well as supporting evidence, the finding is supported by substantial evidence." *Garcia v. Boise Cascade Corp.*, 309 Or 292, 295, 787 P2d 884 (1990).

■    We begin our analysis by specifically addressing the findings challenged by plaintiff. First, plaintiff argues that there is no evidence to support the Board's finding that plaintiff "had a line of credit from which he could obtain a

loan." Plaintiff testified that at the time he went to the ranch to request a loan from his father,

> "I was back behind on my bills three months and the office was not operating at a profit and I was — my own resources were exhausted and I knew to get some additional capital — which I usually borrow from dad or he helps with the co-signature or something."

He also testified that when his father turned down a loan request he made sometime in 1987, before September, that he "had to scramble a couple thousand bucks out of the credit card to cover the phone bill." A managing broker who worked for the corporation from April, 1986, until November, 1987, testified:

> "Q. Did you have any personal knowledge about what [plaintiff] specifically did in terms of finances?
>
> "A. Um-hum. Yeah. That he had to borrow money. You mean —
>
> "Q. Yeah.
>
> "A. I — I guess, a line of credit. Um-hum.
>
> "Q. You had personal knowledge about that?
>
> "A. Yes, I did.
>
> "Q. And did you have personal knowledge as to who he would borrow money from?
>
> "A. Um-hum. He generally would borrow it from his dad or his grandfather or against a line of credit."

We conclude that the Board's finding that plaintiff had a line of credit from which he could have obtained funds is supported by substantial evidence.

■    Plaintiff also argues that the Board's finding that there was no urgency regarding the presentation of the commission plan documents is not supported by substantial evidence. Plaintiff testified that he "wanted" his father to review and approve the plan before he intended to implement it on October 1, 1987, two weeks after he was to return from the ranch. There is also evidence that the documents were left with his father for him to examine. In the light of that evidence, we conclude that the Board's finding is supported by substantial evidence.

Plaintiff argues that, even if the Board's findings are supported by substantial evidence, its decision is inconsistent with *Marshall v. Cosgrave, Kester, Crowe, Gidley*, 112 Or App 384, 830 P2d 209, *rev den* 314 Or 391 (1992). In that case, the plaintiff was an advisor for a school district who decided, on her own volition, to pick up cupcakes one night on her way home from work to bring to her students the next day. Because the plaintiff worked in southeast Portland and lived in west Portland, her normal route to and from work required her to cross the Sellwood Bridge. She had planned to pick up the cupcakes at a market near her home in west Portland. As she was crossing the bridge, her car was struck and she suffered serious injuries. We held that her injuries were compensable under the dual-purpose doctrine, because the business mission was accomplished by the plaintiff arranging for a friend to pick up the treats and because the plaintiff's supervisors regarded the trip to be "school-related."

We emphasized in *Marshall* that the overriding inquiry in deciding whether the dual-purpose doctrine applies is "whether the business aspect of the trip was significant enough to have necessitated it, independently of the employee's personal purpose." 112 Or App at 390. That is merely a restatement of what we said in *Rosencrantz v. Insurance Service, supra*. The only additional comment that we made in *Marshall* was that "the employer's later directive to another employee to complete the mission is one possible basis, but not the exclusive one, for determining that the injured employee's journey had a significant business purpose." 112 Or App at 390. That comment has no application in this case, and plaintiff is wrong when he says that *Marshall* is controlling.

The evidence supports the Board's conclusion that plaintiff's injuries were not compensable under the dual-purpose doctrine. Under the dual-purpose test, if plaintiff was injured while on a trip that "had to have been made" to fulfill the business objective, then his injuries are compensable. The Board did not find the factual predicate necessary to make the trip compensable and, even if Garber had perfected review, we would have affirmed as a matter of law.

Plaintiff's remaining assignments of error do not require discussion.

Reversed and remanded as to defendants Smith and Dye on plaintiff's second claim for relief; otherwise affirmed.