Argued and submitted January 24, affirmed March 8, 2000

Scott D. McCOMAS,
David A. Nault and Jammers West, Inc.,
an Oregon corporation,
*Appellants,*

*and*

MIXED NUTS, INC.,
an Oregon corporation,
*Plaintiff,*

*v.*

Christopher C. BOCCI,
*Respondent.*

(97C11861; CA A105301)

996 P2d 506

Maureen C. VanderMay argued the cause for appellants. With her on the briefs was The VanderMay Law Firm.

Sarah Rhoads Troutt argued the cause for respondent. With her on the brief was Michael C. McClinton.

Before Landau, Presiding Judge, and Linder and Brewer, Judges.

BREWER, J.

### BREWER, J.

Plaintiffs appeal from summary judgment for defendant on their legal malpractice and breach of contract claims, as well as from the denial of their cross-motion for summary judgment on the malpractice claim. We affirm.

Plaintiffs are a corporation, its president, and its secretary. This case arises out of plaintiffs' attempt to obtain a Retail Malt Beverage (RMB) license from the Oregon Liquor Control Commission (OLCC) for a tavern they had contracted to purchase in Independence, Oregon. The purchase of the business, which was to be known as "Jammers West," and the accompanying 25-year lease of the premises both were contingent on issuance of the RMB license. In March 1994, after conducting an investigation, OLCC regulatory staff recommended that the license be denied. Plaintiffs hired defendant in late March or early April 1994 to represent them in connection with their continuing efforts to obtain the license. Plaintiffs requested a hearing on the proposed denial. The hearing, at which defendant represented plaintiffs, was held in June 1994.

According to the affidavit of the corporation's president Scott McComas, submitted in opposition to a motion for summary judgment, defendant made the following contractual guarantee after the OLCC hearing:

"On or about June 23, 1994, plaintiff David Nault and I had lunch with [defendant] following an OLCC hearing in the Jammers West licensing matter.

"* * * * *

"The primary topic discussed at this lunch was how to proceed in the event that the OLCC denied an RMB license for Jammers West.

"[Defendant] repeatedly assured [plaintiffs] that if the OLCC denied a license to Jammers West, we would prevail at the Oregon Court of Appeals. [He] stated that he was completely confident that we would prevail in that forum. He stated further that if we received an adverse OLCC determination, we would 'kick ass' at the Court of Appeals."

Defendant contends that he "never guaranteed [p]laintiffs a result at the Court of Appeals * * *[,] that he did not believe an appeal from the OLCC's adverse Final Order would be successful[,] and that he communicated his belief to the [p]laintiffs."

In October 1994, the hearings examiner recommended that a license be issued with restrictions. In March 1995, after considering exceptions to the hearings examiner's recommendation, OLCC denied the license on two grounds: (1) The establishment was located in a "problem" area, OAR 845-005-0026(3)(a)[1]; and (2) McComas had "a record of using alcoholic beverages to excess," OAR 845-005-0025(4)(a).[2] Plaintiffs moved for reconsideration, which OLCC denied. Although defendant proceeded with the plan to seek review of the final OLCC order, the petition for judicial review that he filed was untimely. As a consequence, we dismissed the appeal. Thus, OLCC's order stood unchallenged and plaintiffs were unable to obtain an RMB license and complete the purchase of Jammers West.

Plaintiffs then filed this action against defendant. They alleged that defendant's failure to file a timely petition

[1] OAR 845-005-0026 provides:

"ORS 471.295(1) allows [OLCC] to deny a license that public interest or convenience does not demand. The following are some of the public interest or convenience reasons for which [OLCC] may deny a license unless the applicant shows good cause to overcome the criteria:

"* * * * *

"(3) Problem Areas:

"(a) The licensed premises will be located in an area that has a history of serious or persistent problems with unlawful activities, noise or disturbances. These problems need not be alcohol-related[.]"

[2] OAR 845-005-0025 specifies:

"If any of the following criteria apply, [OLCC] will deny a license unless the applicant shows good cause that overcomes the criterion involved:

"* * * * *

"(4) Alcohol or Controlled Substance History or Record:

"(a) The applicant has a recent history or record of using alcohol or controlled substances to excess. Some of the types of records [OLCC] uses to establish a record of using to excess include court, Motor Vehicles Division, police, or medical records[.]"

for judicial review constituted professional negligence. Furthermore, plaintiffs asserted that defendant's omission constituted a breach of the alleged contractual guarantee to obtain a reversal of OLCC's decision in this court. Defendant moved for summary judgment, contending, among other arguments, that plaintiffs were not damaged by his failure to file in time, because plaintiffs would not have succeeded in obtaining reversal of the adverse OLCC decision. Plaintiffs filed a cross-motion for summary judgment on the issue of liability with respect to the malpractice claim.

The trial court granted defendant's motion for summary judgment and denied plaintiffs' cross-motion for summary judgment, concluding that:

"[With respect to the professional negligence claim,] if the [p]laintiffs would *not* have prevailed at the Court of Appeals, it could also be fairly said that the [p]laintiffs would *not* have been damaged and therefore it makes no difference whether the [d]efendant missed the filing deadline.

"* * * * *

"In my opinion the result must be the same vis-a-vis the contract claim as it is the malpractice claim. The [p]laintiffs say the damages arose due to the failure of the [d]efendant to perfect the appeal. Because the appeal, in my opinion, would not have been successful, the failure to perfect [the appeal] caused the [p]laintiffs no damages."

On appeal, plaintiffs make four assignments of error, only one of which requires extended discussion. We briefly discuss plaintiffs' assignment of error to the grant of summary judgment on their professional negligence claim only to explain the ground for our decision and to place in perspective our discussion of plaintiffs' contract claim.

■ With respect to the malpractice claim, our review of the record discloses that OLCC's findings of fact were supported by substantial evidence and its conclusions were supported by substantial reason. *Graham v. OLCC*, 25 Or App 759, 762, 551 P2d 112, *rev den* (1976). Plaintiffs do not suggest that the order was vulnerable for any other reason. Therefore, plaintiffs would not have prevailed on the merits of their petition for review of the final OLCC order, even if the

petition for judicial review had been timely filed. For that reason, we agree with the trial court that plaintiffs were not damaged in the ways they alleged in their malpractice claim by defendant's failure to timely file a petition for review. *St. Paul Fire & Marine Ins. v. Speerstra*, 63 Or App 533, 543, 666 P2d 255, *rev den* 295 Or 773 (1983). However, our analysis of plaintiffs' contract claim takes a different path.

In their third assignment of error, plaintiffs argue that the trial court erred in granting summary judgment to defendant on their breach of contract claim. Plaintiffs argue that defendant's guarantee arose in the context of the parties' existing contract of representation and is, therefore, enforceable. Plaintiffs also challenge the trial court's conclusion that their entitlement to damages for breach of contract depends on whether they would have prevailed on the merits following appellate review of the OLCC order. Plaintiffs assert that, unlike the rule governing professional negligence claims, the measure of damages for breach of a contract to produce a particular result does not require a plaintiff to prove the "case within a case." Defendant denies making a guarantee and contends, among other arguments, that plaintiffs' evidence opposing summary judgment was insufficient to create a genuine issue of material fact with respect to the existence of an enforceable contractual guarantee.

The trial court, as noted, granted summary judgment on both the malpractice and breach of contract claims, because it concluded that plaintiffs could not prevail on any of their claims unless they established that their petition for review of OLCC's order, if timely filed, would have succeeded on the merits. We conclude that summary judgment was properly granted on each of plaintiffs' claims but affirm for a reason different from that given by the trial court with respect to the breach of contract claim. *See Bannister v. Longview Fibre Co.*, 134 Or App 332, 336, 894 P2d 1259 (1995); *Capital Investments v. Lofgren*, 81 Or App 93, 97, 724 P2d 862 (1986).

According to plaintiffs' pleadings and evidentiary submissions, defendant undertook his representation of them in a contract made between the parties in late March or early April 1994. Defendant's alleged guarantee occurred,

plaintiffs assert, on or about June 23, 1994—following OLCC's hearing, but before OLCC made its decision to deny the license. Plaintiffs contend that the guarantee was made in the context of a discussion about "how to proceed in the event that OLCC denied an RMB license for Jammers West." In their brief to the trial court, plaintiffs themselves characterized the guarantee as one made "in the course of [the] representation."

If, as plaintiffs argue, a promise of appellate success was made in the context of defendant's preexisting contractual undertaking, then it is unenforceable. A promise made after the creation of a contract and arising in the course of its performance is gratuitous and establishes no duty unless it is supported by new consideration. *McGrath v. Electrical Const. Co.*, 230 Or 295, 305-06, 364 P2d 604 (1961); *Rodgers et ux v. Reimann et ux*, 227 Or 62, 72, 361 P2d 101 (1961). Plaintiffs have not alleged or proven that they treated defendant's statement as a contractual offer by accepting it or that they furnished any consideration for the alleged promise.[3] Therefore, the statements, if made, merely constituted defendant's prediction or opinion, unfettered by contractual constraints.

Plaintiffs' reliance on *Allen v. Lawrence*, 137 Or App 181, 903 P2d 919 (1995), *rev den* 322 Or 644 (1996), is misplaced for the same reason. Plaintiffs argue that *Allen* stands for the proposition that an attorney's promise to guarantee a specific result, although perhaps unwisely given, is nonetheless enforceable. In that case, however, the circumstances were quite different from those here. The plaintiff in *Allen* filed a medical malpractice action *pro se*, which was dismissed for failure to state a claim. *Id.* at 183. The plaintiff alleged that, at the time he retained the defendant attorneys, the attorneys "promised and agreed with plaintiff that they would file a Motion to Set Aside Judgment * * * and would get the case reinstated." *Id.* at 185 (emphasis omitted). The judgment of dismissal was not set aside, and the plaintiff, in turn, sued his attorneys for malpractice. We reversed the

---

[3] Nor have plaintiffs pleaded or proven an enforceable modification of the existing contract for legal services, which requires the same elements. *Mitchell v. Pacific First Bank*, 130 Or App 65, 75 n 7, 880 P2d 490 (1994) ("modification requires offer and acceptance and consideration").

trial court's dismissal of the plaintiff's claim for breach of contract. We concluded that:

> "An attorney's agreement to obtain a particular result, *i.e.*, to 'get the case reinstated,' does not implicate any general standard of care. It is an explicit promise to produce a particular result, apart from an agreement to exercise a general standard of care to prosecute a claim. Because the complaint includes an allegation that defendants breached a contractual promise, which could give rise to liability regardless of the level of care exercised in attempting to produce the result, the complaint states a claim for breach of contract, and the trial court erred in dismissing that claim." *Id.* at 185.

In the context of a motion to dismiss for failure to state a claim under ORCP 21A(8), the plaintiff in *Allen* was entitled to the benefit of all inferences that could reasonably be drawn from the facts alleged in his complaint. *See Fessler v. Quinn*, 143 Or App 397, 400, 923 P2d 1294 (1996). The complaint alleged that the defendant specifically undertook duties "in" the parties' contract, which were duties beyond the general standard of care for legal representation. *Allen*, 137 Or App at 184. As pleaded, it could reasonably be inferred that the alleged undertaking was an integral part of the defendant's offer of services and, therefore, furnished consideration for the plaintiff's acceptance. Here, on the summary judgment record, the timing of the alleged promise does not permit such an inference. It is undisputed that defendant's alleged statement was made months after the parties' existing contractual arrangement was established and there is no evidence that it was supported by consideration. Therefore, defendant's statement, if made, constituted a gratuitous prediction that defendant had no contractual duty to produce. The trial court did not err in granting summary judgment in favor of defendant and in denying plaintiffs' cross-motion for summary judgment.

Affirmed.