503 S.E.2d 787

**HOLY LOCH DISTRIBUTORS, INC.; George Hart; and Ann Law, Appellants,**

v.

**R.L. HITCHCOCK; A. Christopher Potts; and Brock & Hitchcock, a South Carolina Partnership, Respondents.**

**No. 2860.**

Court of Appeals of South Carolina.

Submitted June 2, 1998.

Decided June 29, 1998.

Rehearing Denied Aug. 19, 1998.

Daryl G. Hawkins, of Lewis, Babcock & Hawkins, Columbia, for Appellants.

Susan Taylor Wall, of Holmes & Thomson, Charleston, for Respondents.

ANDERSON, Judge:

Foreign plaintiffs George Hart and Ann Law brought this action against their attorneys for failing to procure appropriate visas, licenses, and permits to enable their business, Holy Loch Distributors, Inc., to lawfully sell beer in South Carolina. Defendants moved for dismissal of the complaint under Rule 12(b)(6), SCRCP for failure to state a cause of action. The trial court dismissed the complaint as barred by the statute of limitations. We reverse and remand.[1]

## FACTUAL/PROCEDURAL BACKGROUND

In 1991, appellants George Hart and Ann Law, who are both citizens of the United Kingdom domiciled in Scotland, decided to pursue a business opportunity involving the distribution of imported beer and related products in Charleston, South Carolina. In order to pursue this prospect, Hart and Law liquidated or abandoned business opportunities in Scotland.

Hart and Law consulted with the respondent law firm Brock & Hitchcock, specifically respondents R.L. Hitchcock and A. Christopher Potts, attorneys at Brock & Hitchcock, to obtain legal advice on organizing their business venture, obtaining the necessary permits and licenses to distribute imported beer, and securing the appropriate visas and immigration documents so as to comply with all legal requirements for conducting business in the United States. On August 12, 1991, Hitchcock and Potts, in their representative capacity, incorporated the business venture as Holy Loch Distributors, Inc. Hitchcock and Potts obtained the appropriate permits and licenses from the State of South Carolina for the distribution of imported beer and related products, but failed to obtain or discover the need for the appropriate federal permits and licenses.

The business operated without incident until November 9, 1993. On that date, agents of the United States Bureau of

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

Alcohol, Tobacco and Firearms (ATF) notified appellants Hart and Law that they were operating Holy Loch in violation of federal law. Specifically, they were charged with (a) distributing alcohol without a permit; (b) distributing alcohol without paying the applicable special taxes; and (c) engaging in every-day business activities in violation of immigration laws.

Appellants paid the assessed fines and taxes. On the advice and with the aid of the Brock & Hitchcock law firm, they applied to the ATF for the appropriate permits or licenses. The firm repeatedly assured Appellants that they would be able to obtain the permits and remain in business.

The ATF denied the application. Appellants, with the aid and advice of the law firm, appealed the denial of the permits. Respondents continued to promise Appellants that they would be able to obtain the documentation needed to remain in business.

On February 8, 1995, Appellants, accompanied by Potts, attended the administrative review of the ATF denial. At that hearing, Potts testified that neither he nor Hitchcock knew that a federal license or permit was required for Holy Loch to legally conduct business in the United States. The adminis-trative law judge upheld the denial of the permits and Holy Loch ceased operation.

Appellants Holy Loch Distributors, Hart, and Law brought this action in a complaint dated March 12, 1997 against attorneys Hitchcock and Potts, and the Brock & Hitchcock law firm. They subsequently filed two amended complaints. They alleged causes of action for (1) professional negligence, (2) breach of fiduciary duty, (3) breach of contract, and (4) breach of warranty. Respondents moved for dismissal of the complaint pursuant to Rule 12(b)(6), SCRCP for failure to state facts sufficient to constitute a cause of action. The trial court granted the motion on the ground the statute of limita-tions had run as to all causes of action. Holy Loch, Hart, and Law appeal.

## ISSUE

Did the trial court err in dismissing the complaint on the basis the allegations were barred by the statute of limita-tions?

## STANDARD OF REVIEW

The ruling on a Rule 12(b)(6), SCRCP motion to dismiss must be based solely upon the allegations set forth in the complaint. *State Bd. of Med. Examiners v. Fenwick Hall, Inc.*, 300 S.C. 274, 387 S.E.2d 458 (1990). The motion will not be sustained if the facts alleged and the inferences reasonably deducible therefrom would entitle the plaintiff to relief on any theory of the case. *Stiles v. Onorato*, 318 S.C. 297, 457 S.E.2d 601 (1995); *Brown v. Leverette*, 291 S.C. 364, 353 S.E.2d 697 (1987). The question to be considered is whether in the light most favorable to the plaintiff, and with every doubt resolved in his behalf, the complaint states any valid claim for relief. *Toussaint v. Ham*, 292 S.C. 415, 357 S.E.2d 8 (1987).

## LAW/ANALYSIS

The ATF notified appellants Hart and Law that they were operating Holy Loch Distributors in violation of federal law on November 9, 1993. In determining Appellants' claims were barred by the statute of limitations, the trial court found Appellants had actual knowledge of Respondents' alleged errors or omissions by November 9, 1993. The court ruled that "[a]ny argument for tolling, even if legally cognizable, ended on February 8, 1995, when the business was closed down after an [administrative] appeal [of the permit denials] was lost. Thereafter, [Appellants] had 21 months in which to file suit but failed to do so.... Consequently, the within action is barred by the statute of limitations as a matter of law."

*Statute of Limitations and the Discovery Rule*

The statute of limitations for bringing legal malpractice claims in South Carolina is three years. S.C.Code Ann. § 15–3–530(5) (Supp.1997) ("action[s] for any injury to the person or rights of another, not arising on contract," i.e., tort actions); *Berry v. McLeod*, 328 S.C. 435, 492 S.E.2d 794 (Ct.App.1997) (legal malpractice claim), *cert. denied* (S.C.1998). The statute of limitations for bringing a contract action is also three years. S.C.Code Ann. § 15–3–530(1) (Supp.1997) ("action[s] upon a contract, obligation, or liability, express or implied").

Traditionally, a cause of action accrued at the time of the injury, but South Carolina has modified this custom by

adopting the "discovery" rule. The statutory limitations period begins to run on negligence actions when a person could or should have known, through the exercise of reasonable diligence, that a cause of action might exist in his or her favor, rather than when a full-blown theory of recovery is developed. *Christensen v. Mikell,* 324 S.C. 70, 476 S.E.2d 692 (1996); *Snell v. Columbia Gun Exchange,* 276 S.C. 301, 278 S.E.2d 333 (1981). The discovery rule for tort actions is specifically provided for by statute. S.C.Code Ann § 15–3–535 (Supp. 1997) ("[A]ll actions initiated under [s]ection 15–3–530(5) [regarding actions for injury to a person or his rights not arising by contract] must be commenced within three years after the person knew or by the exercise of reasonable diligence should have known that he had a cause of action.").

■ The discovery rule is applicable to contract actions. *Santee Portland Cement Co. v. Daniel Int'l Corp.,* 299 S.C. 269, 384 S.E.2d 693 (1989) (extending the discovery rule to contract actions while noting only certain statutes have "built in" discovery provisions within the statute itself), *overruled on other grounds by Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors Div. of Unidynamics Corp.,* 319 S.C. 556, 462 S.E.2d 858 (1995) (amendment to general contract statute of limitations reducing period from six to three years did not impliedly repeal South Carolina's UCC statute of limitations of six years).

■ Our Supreme Court has defined "reasonable diligence" as follows:

The exercise of reasonable diligence means simply that an injured party must act with some promptness where the facts and circumstances of an injury would put a person of common knowledge and experience on notice that some right of his has been invaded or that some claim against another party might exist. The statute of limitations begins to run from this point and not when advice of counsel is sought or a full blown theory of recovery developed.

*Mitchell v. Holler,* 311 S.C. 406, 409, 429 S.E.2d 793, 795 (1993) (quoting *Snell v. Columbia Gun Exch., Inc.,* 276 S.C. 301, 303, 278 S.E.2d 333, 334 (1981)). The test of whether a person should have known the operative facts is objective,

rather than subjective. *Kreutner v. David,* 320 S.C. 283, 465 S.E.2d 88 (1995).

## *Equitable Estoppel and Tolling of the Statute of Limitations*

■ Under the discovery rule, the statute of limitations would begin to run on November 9, 1993, when Appellants first learned from the ATF that Respondents had failed to procure the documentation necessary for them to operate lawfully. As noted above, Appellants' original complaint was not filed until March 12, 1997, apparently after the running of the three-year limitations period. However, Appellants claim Respondents should be equitably estopped from asserting the statute of limitations as a complete bar to their claims because Appellants relied on Respondents' representations that they would be able to take corrective actions that would enable Appellants to remain in business.[2]

■ A defendant may be estopped from asserting the statute of limitations as a defense if the delay that otherwise would give operation to the statute has been induced by the defendant's conduct. This may consist of an express representation that the claim will be settled without litigation or conduct that suggests a lawsuit is not necessary. *Vines v. Self Memorial Hosp.,* 314 S.C. 305, 443 S.E.2d 909 (1994); *Wiggins v. Edwards,* 314 S.C. 126, 442 S.E.2d 169 (1994).

■ Although asserted as a defense in a law case, equitable estoppel is an equitable issue to be tried and determined by the judge rather than by a jury. *Gaymon v. Richland Memorial Hosp.,* 327 S.C. 66, 488 S.E.2d 332 (1997) (a defense of equitable estoppel interposed in a law case should be tried by the court as an equitable issue). In *Gaymon,* our Supreme

---

**2.** Appellants alternatively argue this Court should apply a "reliance rule" to toll the statute of limitations during the time Respondents' conduct misled or deceived them, citing the workers' compensation case of *Hopkins v. Floyd's Wholesale,* 299 S.C. 127, 382 S.E.2d 907 (1989). We believe Appellants have misconstrued the reasoning of our Supreme Court in this case. *Hopkins* dealt with the application of equitable estoppel to toll the statute of limitations where Hopkins had reasonably relied on the employer's assurances that it would "take care of" Hopkins' workers' compensation claim. For clarity, the court simply labeled the period during which the statute of limitations would be tolled as the "reliance period."

Court reversed the trial judge's determination that a party was entitled to a jury trial on this claim, explaining:

> In ruling the equitable estoppel issue should be tried by a jury, the trial judge relied on cases stating that the issue whether a defendant's conduct prevented the plaintiff from filing suit is "a question of fact for the jury." *See, e.g., Vines v. Self Mem. Hosp.,* 314 S.C. 305, 443 S.E.2d 909, 911 (1994) ("Generally, the issue of whether estoppel bars a defendant from claiming the statute of limitations is a jury question."); *Lovell v. C.A. Timbes, Inc.,* 263 S.C. 384, 210 S.E.2d 610, 612 (1974) ("It is a question of fact for the jury whether the acts [and] representations . . . lulled the plaintiff into a sense of security, preventing him from filing the suit before the running of the statute."); *Dillon County School Dist. No. 2 v. Lewis Sheet Metal Works, Inc.,* 286 S.C. 207, 332 S.E.2d 555, 561 (Ct.App.1985) (citing *Lovell,* supra), *overruled on other grounds, Atlas Food Sys. and Servs., Inc. v. Crane Nat'l Vendors,* 319 S.C. 556, 462 S.E.2d 858 (1995).
>
> These cases are not dispositive since they involved no issue whether equitable estoppel should be tried by a jury or by the court in equity. While these cases are correctly cited for the proposition that equitable estoppel may involve a question of fact *for the fact-finder,* it is mere dictum that such a question of fact is for a jury. To the contrary, in *Knight v. Stroud,* 212 S.C. 39, 46 S.E.2d 169 (1948), we specifically held a defense of equitable estoppel interposed in a law case should be tried by the court as an equitable issue. *See also Atlantic and Charlotte Air Line Ry. Co. v. Victor Mfg. Co.,* 79 S.C. 266, 60 S.E. 675 (1908); *Quattlebaum v. Taylor,* 45 S.C. 512, 23 S.E. 617 (1896) (a defense based on estoppel is equitable in nature); *and Floyd v. Floyd,* 306 S.C. 376, 412 S.E.2d 397 (1991) (legal and equitable issues asserted in the same action are triable by a jury and the court respectively). Accordingly, the trial judge's ruling that respondents are entitled to a jury trial on their claim of equitable estoppel is REVERSED.

*Id.* at 67–68, 488 S.E.2d at 333.

In *Black v. Lexington School District No. 2,* 327 S.C. 55, 488 S.E.2d 327 (1997), our Supreme Court reiterated that

equitable estoppel typically is a question of fact for the judge to determine as the fact-finder of this equitable issue:

> Recently, this Court clarified that equitable estoppel is an *equitable* issue to be determined by the *judge* rather than by the jury. *See Gaymon v. Richland Mem. Hosp.,* [327 S.C. 66], 488 S.E.2d 332 (1997). *Vines, Dillon,* and similar cases should be read for the proposition that equitable estoppel typically is a question of fact for the fact-finder (the judge), not for the incorrect proposition that equitable estoppel is a jury question.

*Id.* at 62 n. 1, 488 S.E.2d at 330–31 n. 1.

█ Appellants Hart and Law maintain Respondents repeatedly assured them they would be able to procure the documentation from ATF and visas to enable them to remain in business. *See True v. Monteith,* 327 S.C. 116, 489 S.E.2d 615 (1997) (a client should be able to rely on the attorney's advice). Appellants argue they reasonably relied on the assurances of Respondents that all federal requirements could be met and delayed any action while Respondents took corrective measures, leading Appellants to believe the need for litigation was obviated. Appellants contend their reliance was reasonable until at least February 8, 1995, the date the administrative law judge ruled their corrective actions were insufficient and denied the permit application. *See Dillon County Sch. Dist. No. 2 v. Lewis Sheet Metal Works, Inc.,* 286 S.C. 207, 332 S.E.2d 555 (Ct.App.1985) (defendant's assurances to plaintiff that defects in roof could be corrected, coupled with attempts to correct defects, is conduct that may lead plaintiff to reasonably believe that it will receive satisfaction without resorting to litigation, thus estopping defendant from asserting statute of limitations), *overruled on other grounds by Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors Div. of Unidynamics Corp.,* 319 S.C. 556, 462 S.E.2d 858 (1995) (amendment to general contract statute of limitations reducing period from six to three years did not impliedly repeal South Carolina's UCC statute of limitations of six years). We hold a triable issue of fact exists for the judge's determination as to whether Appellants reasonably relied on the assurances and conduct of Respondents that the matter could be resolved without resort to litigation, thus estopping Respondents from relying on the statute of limitations defense.

Respondents assert estoppel does not apply unless their actions induced a delay beyond the limitations period. Respondents do not cite any authority for this proposition, and we do not see any reason to so limit the doctrine.

Respondents argue, and the trial court ruled, that if the statute of limitations was tolled, it was tolled only until February 8, 1995, and thereafter Appellants had 21 months remaining in which to file suit, not three years. This argument indicates a misunderstanding of how tolling operates.

Tolling may operate to temporarily suspend the running of the limitations period. *See, e.g., Hughes v. Water World Water Slide, Inc.,* 314 S.C. 211, 442 S.E.2d 584 (1994) (plaintiff's delivery of summons and complaint to sheriff for service before limitations period had run served to suspend the expiration of statute of limitations until service was effected after statutory period would have expired). It can also delay the start of the limitations period. *See* S.C.Code Ann. § 15–3–40 (Supp.1997) (tolling provisions for persons under disability); *Black,* 327 S.C. 55, 488 S.E.2d 327 (when minor student suffered injury, running of limitations period did not begin until the date of his 18th birthday, after which he had two years in which to file suit); *Hopkins v. Floyd's Wholesale,* 299 S.C. 127, 382 S.E.2d 907 (1989) (tolling the statute of limitations in workers' compensation case gives employee two years following the "reliance period" in which to file a timely claim); *Blyth v. Marcus,* 322 S.C. 150, 154, 470 S.E.2d 389, 391 (Ct.App.1996) (statute tolling limitations period while defendant resides out of state "describes one set of fortuitous circumstances which suspend a statute of limitations, thereby delaying commencement requirements"), *cert. denied* (S.C. 1997).

Applying the concept to the case now before us, as we noted above, it is a factual question whether Appellants' reliance on Respondents' assurances would operate to suspend the start of the limitations period until February 8, 1995, the date the administrative law judge ruled their corrective actions to comply with the federal law requirements were inadequate. On that date, the judge upheld the ATF's denial of their permit application, effectively putting Holy Loch out of business. If equitable estoppel applies, Appellants would have

had three years, or until February 8, 1998, to file suit. Since they filed their initial complaint in March of 1997, Appellants' actions would not be barred by the applicable statute of limitations if estoppel applies.

### "Continuous Representation" Rule

Alternatively, Appellants have urged us to apply the "continuous representation" rule. This rule is generally discussed in the context of medical malpractice actions as the "continuous treatment" rule. The rule provides the applicable statute of limitations does not begin to run until the course of treatment by the physician for the particular condition is terminated, unless during treatment the patient learns or should learn of negligence, in which case the statute runs from the time of discovery, actual or constructive. *Preer v. Mims*, 323 S.C. 516, 519, 476 S.E.2d 472, 473 (1996).

As urged by Appellants, application of the rule in this legal malpractice action would toll the statute of limitations while "continuous efforts" were being made by Respondents. This Court has described the continuous treatment rule as an exception to the general rule governing the accrual of a cause of action. *Dillon County Sch. Dist. No. 2*, 286 S.C. 207, 332 S.E.2d 555 (case involving repeated efforts to repair defective roof). In *Dillon* we doubted our Supreme Court would apply the rule, especially since the discovery rule is applicable in South Carolina and is itself an exception to the traditional rule of accrual. *Id.* at 216–17, 332 S.E.2d at 560. Our Supreme Court has since considered the rule in several medical malpractice cases but declined to apply it where the application of the discovery rule served to bar the plaintiff's action. *See, e.g., Anderson v. Short*, 323 S.C. 522, 476 S.E.2d 475 (1996); *Preer*, 323 S.C. 516, 476 S.E.2d 472. We decline to apply this rule.

### Breach of Express Warranty

One of Appellants' four causes of action is for breach of express warranty. Appellants argue this action would not accrue until after the breach occurred, which did not happen here until February 8, 1995. Respondents argue no jurisdiction in the United States except Louisiana recognizes a "war-

ranty of result" cause of action in a legal malpractice case. *See, e.g., Barnett v. Sethi,* 608 So.2d 1011 (La.Ct.App.1992).

▇▇▇ Upon agreeing to represent a client, an attorney impliedly represents that he or she possesses the requisite degree of learning, skill, and ability necessary to the practice of the profession, and that the attorney will exercise reasonable and ordinary care and diligence in the use of those skills and in the application of the attorney's knowledge to the cause of the client. *See Norris v. Alexander,* 246 S.C. 14, 142 S.E.2d 214 (1965) (attorney disciplinary action discussing the professional responsibilities of an attorney in an attorney-client relationship). *See also* 7 Am.Jur.2d *Attorneys at Law* § 215 (1997) ("[A]n attorney engages that he or she possesses and will use the reasonable legal knowledge that lawyers of ordinary ability and skill possess and exercise. An attorney is expected to possess knowledge of those plain and elementary principles of law which are commonly known by well-informed attorneys, and to discover those additional rules of law which, although not commonly known, may readily be found by standard research techniques. Thus, if the law on a subject is well and clearly defined and has existed and been published long enough to justify the belief that it was known to the profession, a lawyer who disregards the rule or is ignorant of it is liable for losses caused by such negligence or want of skill."). Ordinarily, however, an attorney is not an insurer or guarantor of the result of the attorney's work. 7A C.J.S. *Attorney & Client* § 254 (1980).

In recent years, however, the South Carolina courts have recognized causes of action for the breach of implied and express warranties by certain professionals whose actions (or failures to act) resulted in adverse consequences to their clients. For example, our Supreme Court has recognized the validity of a breach of implied warranty action against engineers, *Tommy L. Griffin Plumbing & Heating Co. v. Jordan, Jones & Goulding, Inc.,* 320 S.C. 49, 463 S.E.2d 85 (1995), and architects, *Beachwalk Villas Condominium Ass'n v. Martin,* 305 S.C. 144, 406 S.E.2d 372 (1991). In addition, this Court has allowed a patient to seek recovery from her dentist for breach of an express pretreatment warranty to effect a particular result. *Burns v. Wannamaker,* 281 S.C. 352, 315 S.E.2d 179 (Ct.App.1984), *appeal after remand,* 286 S.C. 336, 333

S.E.2d 358 (Ct.App.1985), *aff'd as modified*, 288 S.C. 398, 343 S.E.2d 27 (1986) (burden of proof for breach of express warranty claim is preponderance of the evidence).

In *Burns*, we analyzed the reasons for allowing a dentist's patient to pursue a claim for breach of an *express* warranty made by the professional:

> Although there are no cases in South Carolina which address the issue of whether a dentist may enlarge his responsibilities and contract to fulfill specific assurances, we know of no reason why he should not be allowed to do so. *See Preston v. Thompson*, 53 N.C.App. 290, 280 S.E.2d 780, 781 (1981), *cert. denied and appeal dismissed*, 304 N.C. 392, 285 S.E.2d 833 (1981). A dentist should be as free as any other person who offers to perform skilled services to contract as he sees fit. If a dentist chooses, he should be able to warrant the results of his treatment. *Guilmet v. Campbell*, 385 Mich. 57, 188 N.W.2d 601, 43 A.L.R.3d 1194 (1971). Indeed, it appears well settled elsewhere that a physician or other healer may bind himself by an express contract to obtain specific results by either treatment or an operation. *See* 61 Am.Jur.2d *Physicians, Surgeons, and Other Healers* § 161 at 292–93 (1981).

*Id.* at 354–55, 315 S.E.2d at 181.

We see no reason to prevent a similar analysis from being applied to attorneys and other professionals who perform skilled services and expressly warrant the results they can obtain for their clients. Although the better practice is to avoid absolute promises to achieve particular results, attorneys who make specific assurances to their clients should be held accountable when clients rely on those promises to their detriment.

## CONCLUSION

We hold a question of fact exists to be tried by the judge regarding whether Respondents' assurances induced Appellants to delay in filing their complaint, thus equitably estopping Respondents from claiming the statute of limitations in defense. The remaining issues are for the jury's determination. We therefore reverse the trial court's dismissal of

Appellants' complaint and remand for further proceedings consistent with this opinion.

**REVERSED and REMANDED.**

HEARN and HOWARD, JJ., concur.