610 S.E.2d 816

**Franklin M. EPSTEIN, M.D. and Southern Neurological Institute, Appellants,**

v.

**David A. BROWN, Esquire, Respondent.**

No. 25953.

Supreme Court of South Carolina.

Heard Jan. 4, 2005.
Decided March 21, 2005.

Hugh M. Claytor, and Heather Goetz Ruth, of Womble, Carlyle, Sandridge and Rice, of Greenville, for Appellants.

M. Dawes Cook, Jr., and P. Gunnar Nistad, of Barnwell, Whaley, Patterson and Helms, of Charleston, for Respondents.

Justice WALLER:

We certified this case from the Court of Appeals pursuant to Rule 204(b), SCACR. The issue on appeal involves the date on which the statute of limitations (SOL) for a legal malpractice claim begins to run.

## FACTS

Dr. Franklin Epstein (Appellant) performed spinal fusion surgery on Marshall O. Welch in February, 1996. Welch died three days later of complications.[1] Welch's estate brought wrongful death and survival actions against Dr. Epstein alleging medical malpractice. Respondent, David Brown, a licensed South Carolina attorney, represented Epstein. On February 18, 1998, a jury returned a verdict of $3,000,000 in the wrongful death action, and $28,535.88 in the survival

---

1. Welch was a 37 year old nurse who worked for Epstein's neurological group, Southern Neurological Institute, in the care of surgical patients. The facts surrounding his surgery and post-surgical care are fully set forth in the Court of Appeals' opinion. *Welch v. Epstein*, 342 S.C. 279, 536 S.E.2d 408 (Ct.App.2000).

action. The following day, the jury assessed $3,000,000 punitive damages against Dr. Epstein.

Brown filed a notice of appeal on behalf of Dr. Epstein. Although Brown remained counsel of record during the appeal, Dr. Epstein was represented on appeal by Stephen Groves, John Hamilton Smith, and Steven Brown. The Court of Appeals affirmed the verdicts on July 31, 2000. *Welch v. Epstein*, 342 S.C. 279, 536 S.E.2d 408 (Ct.App.2000). This Court denied certiorari in January 2001.

Dr. Epstein filed this legal malpractice claim against Brown on January 9, 2002, alleging breach of fiduciary duty, negligence, and breach of contract. Brown moved for summary judgment on the ground that Dr. Epstein had failed to commence the action within the applicable three-year statute of limitations (SOL). The trial court ruled the SOL began to run, at the latest, on February 18, 1998, the date of the jury's verdict, such that this action was untimely. Accordingly, Brown was granted summary judgment.

## STANDARD OF REVIEW

In reviewing the grant of a summary judgment motion, this Court applies the same standard as the trial court under Rule 56(c), SCRCP: "summary judgment is proper when 'there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law.'" *Dawkins v. Fields*, 354 S.C. 58, 69, 580 S.E.2d 433, 438–439 (2003), *citing Baughman v. American Tel. and Tel. Co.*, 306 S.C. 101, 410 S.E.2d 537, 545 (1991). In determining whether summary judgment is appropriate, the evidence and its reasonable inferences must be viewed in the light most favorable to the nonmoving party. *Id.* at 115, 410 S.E.2d at 545.

## ISSUE

Did the trial court err in ruling Dr. Epstein knew, or should have known, he had a possible claim against Brown by the date of the jury's adverse verdict, such that the SOL began to run on that date?

## DISCUSSION

 South Carolina Code Ann. § 15–3–530 (Supp.2003) provides a three year statute of limitations for legal malpractice lawsuits. Under the discovery rule, the statute of limitations begins to run from the date the injured party either knows or should know, by the exercise of reasonable diligence, that a cause of action exists for the wrongful conduct. *See Dean v. Ruscon Corp.*, 321 S.C. 360, 468 S.E.2d 645 (1996); S.C.Code Ann. § 15–3–535. *See also Berry v. McLeod*, 328 S.C. 435, 492 S.E.2d 794 (Ct.App.1997). The exercise of reasonable diligence means simply that an injured party must act with some promptness where the facts and circumstances of an injury would put a person of common knowledge and experience on notice that some right of his has been invaded or that some claim against another party **might** exist. **The statute of limitations begins to run from this point and not when advice of counsel is sought or a full-blown theory of recovery developed.** *Id.* (emphasis supplied). Under § 15–3–535, the statute of limitations is triggered not merely by knowledge of an injury but by knowledge of facts, diligently acquired, sufficient to put an injured person on notice of the existence of a cause of action against another. *True v. Monteith*, 327 S.C. 116, 120, 489 S.E.2d 615, 617 (1997).

In his complaint, Dr. Epstein alleged Brown was negligent in numerous particulars, including: failing to conduct an adequate investigation, failing to advise Epstein to settle, failing to keep Epstein adequately informed during the pendency of the case, representing multiple defendants with conflicts of interest, forgetting to call expert witnesses, and adopting a defense which was contrary to Dr. Epstein's medical opinion. Counsel for Dr. Epstein conceded that many of these allegations were within Dr. Epstein's knowledge at the time of the jury's verdict. The court found the majority of the damages alleged by Dr. Epstein stemmed from the adverse jury verdict, and the damages to his reputation resulting from the publicity were all damages suffered at the time of the verdict. The court concluded that, although these damages might be mitigated by a successful appeal, they could never be wholly eliminated by a reversal of the jury's verdict. Accordingly, the trial court ruled Dr. Epstein either knew, or should have

known, of a possible claim against Brown by the date of the adverse verdict, such that the SOL began to run on that date.

■ Dr. Epstein contends that because Brown remained counsel of record during the pendency of the appeal,[2] the SOL did not begin to run until this Court denied certiorari, in January 2001. Dr. Epstein urges us to adopt the "continuous representation" rule to toll the SOL during the period an attorney continues to represent a client on the same matter which forms the basis of a legal malpractice action. We decline to adopt the continuous representation rule in the context of a legal malpractice claim and adhere, instead, to the discovery rule set forth by the Legislature.

Under the continuous representation rule, the SOL is tolled during the period an attorney continues to represent the client on the same matter out of which the alleged malpractice arose. *See* George L. Blum, *Attorney Malpractice—Tolling or Other Exceptions to Running of Statute of Limitations,* 87 A.L.R. 5th 473, § 4 (2001). In those jurisdictions where it is adopted, the rule requires: 1) ongoing representation by the lawyer; 2) on the same subject matter; and 3) continuous representation. *See generally,* Mallen and Smith, *Legal Malpractice,* § 22.13, p. 431 (5th Ed. 2000).

This Court has not specifically addressed the continuous representation rule. However, in *Holy Loch Distributors v. Hitchcock,* 332 S.C. 247, 503 S.E.2d 787 (Ct.App.1998), *rev'd on other grounds,* 340 S.C. 20, 531 S.E.2d 282 (2000), the Court of Appeals specifically declined to adopt the continuous representation rule, based in large part on this Court's refusal to adopt the "continuous treatment" rule in the context of medical malpractice cases. *See Preer v. Mims,* 323 S.C. 516, 519, 476 S.E.2d 472, 473 (1996).

In *Harrison v. Bevilacqua,* 354 S.C. 129, 580 S.E.2d 109 (2003), this Court declined to adopt the continuous treatment rule. In *Harrison,* the plaintiff was a schizophrenic who had been involuntarily committed in 1982. He remained there until 1995, and ultimately brought suit against the defendant, the state hospital, alleging he had been confined too long and

---

**2.** Although Brown remained counsel of record, the appeal was handled by a different firm.

had been improperly medicated. He argued his causes of action should be deemed to have accrued on the date of his discharge in 1995. We defined the continuous treatment rule as follows:

> The so-called continuous treatment rule as generally formulated is that if the treatment by the doctor is a continuing course and the patient's illness, injury or condition is of such a nature as to impose on the doctor a duty of continuing treatment and care, the statute does not commence running until treatment by the doctor for the particular disease or condition involved has terminated—unless during treatment the patient learns or should learn of negligence, in which case the statute runs from the time of discovery, actual or constructive.

354 S.C. at 135, 580 S.E.2d at 112, *quoting* David W. Louisell & Harold Williams, Medical Malpractice, § 13.02[3] (1996).

In *Harrison*, we recognized the policy behind adoption of the continuous treatment rule being that, without such a rule, a plaintiff would be required to bring suit against his or her physician before treatment is even terminated. 354 S.C. at 136, 580 S.E.2d at 113. Alternative reasons justifying the rule are "a patient's right to place trust and confidence in his physician," the difficulty of determining the precise timing of an act of malpractice during continuous treatment, and "basic tort principles of fairness and deterrence." *Id.* at 136–137, 580 S.E.2d at 113. Notwithstanding the very legitimate policy rationales in favor of adoption of a continuous treatment rule, we declined to adopt it, finding the Legislature has set absolute time restrictions for the bringing of medical malpractice actions in the statutes of repose both for medical malpractice and for persons operating under disability. *See* S.C.Code Ann. §§ 15-3-545 and 15-3-40. *Id.*

We find the justifications favoring adoption of the continuous treatment rule are similar to those justifying the continuous representation rule, to wit: to avoid disruption of the attorney-client relationship; to allow an attorney to continue efforts to remedy a bad result, even if some damages have occurred and the client is aware of the attorney's errors. *See generally,* Mallen and Smith, *Legal Malpractice,* § 22.13 (5th Ed. 2000). *See also United States National Bank of Oregon*

*v. Davies,* 274 Or. 663, 548 P.2d 966, 970 (1976) (it seems anomalous to force a plaintiff to contend in the underlying litigation on appeal that he is entitled to a favorable decision, while in a simultaneous legal malpractice action he is forced to contend his attorney's negligence was why he received an unfavorable judgment at the trial level).

Notwithstanding such justifications, numerous jurisdictions refuse to judicially adopt the continuous representation rule. *See Beesley v. Van Doren,* 873 P.2d 1280 (Alaska 1994) (statute of limitations in attorney malpractice cases is not tolled pending final resolution of litigation underlying malpractice claim); *Laird v. Blacker,* 2 Cal.4th 606, 7 Cal.Rptr.2d 550, 828 P.2d 691 (1992) (limitations period commences and is not tolled by filing an appeal absent continuous representation by the trial attorney); [3] *Law Offices of Jerris Leonard, P.C. v. Mideast Sys. Ltd.,* 111 F.R.D. 359, 363 (D.D.C.1986) (under discovery rule, legal malpractice claim was deemed to have occurred when summary judgment entered against it or at latest when answer was due in suit for legal fees); *Zupan v. Berman,* 142 Ill.App.3d 396, 96 Ill.Dec. 889, 491 N.E.2d 1349, 1351–52 (1986) (statute of limitations for legal malpractice began to run when adverse judgment was entered, not when appellate court modified judgment); *Chambers v. Dillow,* 713 S.W.2d 896, 898–99 (Tenn.1986) (injury for legal malpractice held to have accrued when lawsuit was initially dismissed).

Generally, those jurisdictions which adopt the continuous representation rule also adopt the continuous treatment in the context of medical malpractice. *See generally* Mallen and Smith at § 22.13, p. 430 (noting rule's medical malpractice origins); *Rosenfield v. Rogin,* 69 Conn.App. 151, 795 A.2d 572 (2002); *Seebacher v. Fitzergerald et al.,* 181 Mich.App. 642, 449 N.W.2d 673 (1989); *Skidmore v. Rottman,* 5 Ohio St.3d 210, 450 N.E.2d 684 (1983) (holding that cause of action for legal malpractice accrues and the statute of limitations commences to run when the client discovers, or, in the exercise of reasonable care and diligence should have discovered, the resulting injury; court noted that policy considerations under-

---

3. Notably, the California statute specifically has a provision for tolling in the event the attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred. West's Ann. Cal.Code Civ. P. § 340.6(2).

lying discovery rule in medical malpractice cases are no less compelling in legal malpractice cases).

In accord with these authorities, and in light of the Legislature's declaration that an action "must be commenced within three years after the person knew or by the exercise of reasonable diligence should have known he had a cause of action,"[4] we decline to adopt the continuous representation rule.

Dr. Epstein asserts that, even if we do not adopt the continuous representation rule, the statute of limitations should not be deemed to have begun to run until the date on which this Court denied certiorari (January 11, 2001), because it was not until that date upon which he suffered "legal damages." We disagree.

Although there is a split of authority as to whether a plaintiff has suffered legally cognizable damages prior to the conclusion of an appeal, those jurisdictions which decline to adopt the continuous representation rule tend to hold that a plaintiff may institute a malpractice action prior to the conclusion of an appeal. *See Laird v. Blacker* 2 Cal.4th 606, 7 Cal.Rptr.2d 550, 828 P.2d 691, 696 (1992)(disagreeing with plaintiff's contention that a successful appeal negates the client's ability to file a malpractice action. The court noted that the client sustains an injury as soon as he or she is forced to incur costs pursuing an appeal and that, "although appellate review may correct judicial error, and thus reduce the client's damages, an appeal does not necessarily exonerate the attorney, nor does it extinguish the client's action against him for negligence in the conduct of trial."); *Beesley v. VanDoren,* 873 P.2d 1280, 1282(Alaska 1994)(rejecting claim that injury or damaging effect on the unsuccessful party is not ascertainable until the appellate process is completed);[5] *Michael v. Beasley,*

---

4. See S.C.Code Ann. § 15–3–535 (Supp.2003).

5. The *Van Doren* court noted that the "overwhelming majority of courts" hold the statute of limitations applicable to a claim for legal malpractice is not tolled pending resolution of the underlying litigation. 873 P.2d at 1282, *citing Rhoades v. Sims,* 286 Ark. 349, 692 S.W.2d 750, 752 (1985); *Laird v. Blacker,* 2 Cal.4th 606, 7 Cal.Rptr.2d 550, 828 P.2d 691, 696 *cert. denied,* 506 U.S. 1021, 113 S.Ct. 658, 121 L.Ed.2d 584, (1992); *Jankowski v. Taylor, Bishop & Lee,* 246 Ga. 804, 273

583 So.2d 245 (Ala.1991), *reversal on other ground recognized by, Borden v. Clement,* 261 B.R. 275 (Bkrtcy. N.D.Ala.2001) (on the date of adverse jury verdict, plaintiffs became obligated to expend additional monies for the appellate process including the continuing service of an attorney, the cost of the transcript, the cost of the appeal, and the inconvenience of the appeal. In finding that the plaintiffs' injury accrued on the date of the jury's verdict, the court held that a plaintiff was not required to exhaust all appellate remedies before filing a claim for legal malpractice); *St. Paul Fire & Marine Insurance Co. v. Speerstra,* 63 Or.App. 533, 666 P.2d 255, 258 (1983) (plaintiff was held to have suffered harm when trial court's judgment was entered, because plaintiff was then required to either pay the judgment or the costs of appeal); *Hunt v. Bittman,* 482 F.Supp. 1017 (D.D.C.1980), aff'd, 652 F.2d 196 (D.C.Cir.), *cert. denied,* 454 U.S. 860, 102 S.Ct. 315, 70 L.Ed.2d 158 (1981), (SOL began to run from date of Watergate conspirator's conviction, the date on which he suffered actual injury). *See generally,* Ronald Mallen, *Limitations and the Need for Damages in Legal Malpractice Actions,* 60 Def. Couns. J. 234, 245–246 (April 1993) (noting that a client who has suffered an adverse result because of a lawyer's negligence has both knowledge of the negligence and present damage).

Epstein also asserts that requiring him to pursue an appeal while simultaneously filing a malpractice suit against his attorney puts him in the awkward position of arguing inconsistent positions in two different courts. The same may also be raised in the context of continuous medical treatment. In any event, there are measures which may be taken to avoid such

S.E.2d 16, 18 (1980); *Belden v. Emmerman,* 203 Ill.App.3d 265, 148 Ill.Dec. 583, 560 N.E.2d 1180, 1183 (1990); *Basinger v. Sullivan,* 540 N.E.2d 91, 94 (Ind.App.1989); *Dearborn Animal Clinic P.A. v. Wilson,* 248 Kan. 257, 806 P.2d 997, 1006 (1991); *Braud v. New England Ins. Co.,* 576 So.2d 466, 469–70 (La.1991); *Hayden v. Green,* 431 431 Mich. 878, 429 N.W.2d 604 (1988); *Sabes & Richman, Inc. v. Muenzer,* 431 N.W.2d 916, 918–19 (Minn.App.1988); *Dixon v. Shafton,* 649 S.W.2d 435, 438 (Mo.1983); *Suzuki v. Holthaus,* 221 Neb. 72, 375 N.W.2d 126, 128 (1985); *Zimmie v. Calfee, Halter & Griswold,* 43 Ohio St.3d 54, 538 N.E.2d 398, 402 (1989); *Chambers v. Dillow,* 713 S.W.2d 896, 898 (Tenn.1986); *Richardson v. Denend,* 59 Wash.App. 92, 795 P.2d 1192, 1195 n. 7 (1990); *Hennekens v. Hoerl,* 160 Wis.2d 144, 465 N.W.2d 812, 818–19 (1991).

inconsistent positions. *See Morrison v. Goff,* 91 P.3d 1050, 1056 (Co.2004); *Gebhardt v. O'Rourke,* 444 Mich. 535, 510 N.W.2d 900 (1994) (holding that a plaintiff who files a malpractice claim against an attorney at the same time an appeal is pending may seek a stay of the malpractice action in the trial court);[6] Mallen, *supra,* 60 Def. Couns. J. at 248 (suggesting that during the pendency of an appeal, "most lawyers are willing to stipulate to toll a statute of limitations on the hope that the existence or extent of an injury will be minimized or terminated" by the appeal).[7]

■ This Court has recognized that, under the discovery rule, the statute of limitations begins to run when a reasonable person of common knowledge and experience would be on notice that a claim against another party might exist. The fact that the injured party may not comprehend the full extent of the damage is immaterial. *Dean v. Ruscon Corp.,* 321 S.C. 360, 363–364, 468 S.E.2d 645, 647 (1996). *See also Wiggins v. Edwards,* 314 S.C. 126, 442 S.E.2d 169 (1994) (reasonable diligence means simply that injured party must act with some promptness where facts and circumstances of injury would put person of common knowledge and experience on notice that some right of his has been invaded or that some claim against another party might exist; statute of limitations begins to run from this point and not when advice of counsel is sought or full-blown theory of recovery is developed); *Snell v. Columbia Gun Exchange, Inc.,* 276 S.C. 301, 278 S.E.2d 333 (1981) (same).

Under the facts of this case, we find Dr. Epstein clearly knew, or should have known he might have had some claim against Brown at the conclusion of his trial. The damages he claims are largely those to his reputation, and the claims he raises in his complaint are primarily related to trial and pre-trial errors. Counsel for Dr. Epstein conceded at oral argument on the summary judgment motion that "some of the allegations down there, your Honor, were within the man's

---

6. *Gebhardt* and *Goff* both involved malpractice claims brought by criminal defendants who brought malpractice claims while pursuing an appeal of their convictions.

7. Here, the only discussions concerning a tolling agreement came after the Court of Appeals' opinion in this matter.

knowledge when the verdict came in." Further, in a letter from Dr. Epstein to his appellate attorney, Steven Groves, Dr. Epstein indicated both that he would not deal with Mr. Brown, and that "I believe that my representation was so egregiously lacking." It is patent Dr. Epstein knew, or should have known, of a possible claim against Brown long before this Court denied certiorari in January 2001. Accordingly, we find the trial court properly granted summary judgment on this issue.[8] The judgment below is

**AFFIRMED.**[9]

MOORE AND BURNETT, JJ., concur, TOAL, C.J., and PLEICONES, J., dissenting in separate opinions.

Chief Justice TOAL dissenting:

I respectfully dissent. I would adopt a bright-line rule that the statute of limitations does not begin to run in a legal malpractice action until an appellate court disposes of the action by sending a remittitur to the trial court.

I agree that under the discovery rule, the statute of limitations is tolled until the date the injured party either knows or should know, by the exercise of reasonable diligence, that a cause of action exists for the wrongful conduct. S.C.Code Ann. § 15-3-535 (Supp.2003); *See also Dean v. Ruscon Corp.*, 321 S.C. 360, 363, 468 S.E.2d 645, 647 (1996) (explaining the discovery rule). In *Dean*, this Court explained the nature of "reasonable diligence":

> [w]e have interpreted the exercise of reasonable diligence to mean that the injured party must act with some promptness where the facts and circumstances of *an injury* place a

8. We do not hold that, in all instances, the date of a jury's adverse verdict is the date on which the SOL begins to run. To the contrary, we hold only that, under the facts of this case, Dr. Epstein knew of a potential claim against Brown by this date, at the latest.

9. The remaining issue is affirmed pursuant to Rule 220(b)(1), SCACR, and the following authority: *Vines v. Self Mem'l Hosp.*, 314 S.C. 305, 309, 443 S.E.2d 909, 911 (1994) (summary judgment is proper where there is no evidence of conduct warranting estoppel).

reasonable person of common knowledge and experience on notice that a claim against another party might exist.

*Id.* (emphasis added).

I disagree with the majority's decision holding that the appellants should have known of the existence of a cause of action arising from respondent's alleged malpractice at the conclusion of the trial. In my opinion, there was no evidence that appellants were injured as a result of respondent's alleged malpractice until the court of appeals disposed of the case by sending a remittitur to the trial court. Therefore, I would establish a bright-line rule that the statute of limitations does not begin to run in a legal malpractice action until a remittitur has been sent to the trial court. As a result, in my opinion, the statute of limitations does not bar Appellants' claim.

Justice PLEICONES dissenting:

I respectfully dissent. I concur in the majority's rejection of the continuous-representation rule and in its retention of the discovery rule. In my opinion, however, Brown should be estopped from asserting the statute of limitations as a defense. I would therefore reverse and remand to the circuit court for trial.

"Under South Carolina law, a defendant may be estopped from claiming the statute of limitations as a defense if the delay that otherwise would give operation to the statute ha[s] been induced by the defendant's conduct." *Kleckley v. N.W. Nat. Cas. Co.*, 338 S.C. 131, 136, 526 S.E.2d 218, 220 (2000) (internal quotation omitted). "Such inducement may consist of conduct that suggests a lawsuit is not necessary." *Kleckley*, 338 S.C. at 136–37, 526 S.E.2d at 220.

Brown affirmatively represented to Epstein that the adverse verdict had resulted from errors of law committed by the trial judge which had in turn affected the jury's fact-finding role. Brown also remained nominally as counsel to Epstein throughout the appeal from the verdict. I would hold that the circuit court erred by holding that Brown's representations coupled with his presence on the appellate team did not reasonably induce Epstein's forbearance. That Brown did not actually participate in the appellate representation, other

than filing the appeal and being counsel of record, makes this conclusion all the more compelling, as his watchful presence bolstered his affirmative representations. I would therefore hold that Brown is estopped from asserting the statute of limitations as a defense.