24492

John PREER and Jacquelyn M. Preer, Appellants v.
Albert D. MIMS, Respondent. .

(476 S.E. (2d) 472)

Supreme Court

*Charles L. Henshaw, Jr.,* of *Furr and Henshaw,* Columbia, *for Appellants.*

*Hoover C. Blanton, Jeter E. Rhodes, Jr.* and *John C. Bradley, Jr.,* all of *McCutcheon, Blanton, Rhodes & Johnson,* Columbia, *for Respondent.*

Heard Apr. 3, 1996.

Decided Sept. 23, 1996.

TOAL, Justice:

In these consolidated medical malpractice actions, John Preer ("Preer") and Jacquelyn Preer ("Mrs. Preer") appeal the trial court's directed verdict in favor of Dr. Albert Mims. We affirm in part and reverse in part.

### FACTUAL/PROCEDURAL BACKGROUND

Preer began seeing Dr. Mims in 1982. Some time later, Preer became acquainted with the prescription drug Vicodin when he took some of the drug his wife was using. The Vicodin relieved his abdominal cramps, so he requested that Mims prescribe the drug for him. In 1986 Mims began prescribing Vicodin for Preer and continued to do so until 1991. Preer's use of Vicodin increased in 1988. In April 1988, Mims prescribed Preer 15 Vicodin pills with two refills. At Preer's request, this was increased to 20 pills per month, and then to 30 pills with two refills per month. By May or June of 1988, he had developed a tolerance for the drug. Preer testified that from 1986 until 1991, he had some 70 office visits with Mims related to obtaining Vicodin prescriptions and was prescribed some 10,000 Vicodin pills over this period. Unbeknownst to Mims, Preer was also obtaining Vicodin from two other doctors beginning in 1990 or 1991.

By July 1988, Mims began advising Preer to use the drug sparingly. The record contains extensive evidence, in the form

of letters and medical notes, of the interaction between Preer and Mims. The pattern that emerges is one of Preer visiting or writing Mims and requesting more Vicodin; Mims counselling Preer that he needed to taper off its use; Preer not tapering off its use; and Preer requesting more Vicodin. At some point, Preer became addicted to the drug. He was admitted into a drug treatment facility in October 1991 and was released eight days later, reported to have been detoxified.

On April 29, 1993, Preer brought this action alleging he had become addicted to the Vicodin as a result of Mims's negligence. Mrs. Preer also initiated an action, alleging loss of consortium. The cases were consolidated and went to trial. At the close of Preer's case, Mims moved for a directed verdict on the grounds that the action was barred by the statute of limitations. The court granted the motion.

Preer appeals arguing the trial court erred in ascertaining the time for commencement of the action under S.C. Code Ann. § 15-3-545(A) (Supp. 1995), the medical malpractice statute of limitations. Mrs. Preer asserts the court erred in applying the same commencement point under the statute of limitations to bar her claim.

## LAW/ANALYSIS

### A. *Statute of Limitations*

Preer contends that the trial court erred in interpreting S.C. Code Ann. § 15-3-545 to bar this action and urges this Court to adopt the continuous treatment doctrine in interpreting the statute.

Under Section 15-3-545(A),

> [A]ny action ... to recover damages for injury to the person arising out of any medical, surgical, or dental treatment, omission, or operation by any licensed health care provider ... acting within the scope of his profession must be commenced within three years from the date of the treatment, omission, or operation giving rise to the cause of action or three years from date of discovery or when it reasonably ought to have been discovered, not to exceed six years from date of occurrence, or as tolled by this section.

When the treatment, omission, or operation consists of a sin-

gle identifiable act, it is relatively easy to determine applicability of this statute; however, application is more difficult where, as is alleged here, the wrongful conduct by the health care provider is not a single act, but "consists of a course of conduct, a series of negligent acts, or a continuing impropriety of treatment." *See* 1 David W. Louisell & Harold Williams, *Medical Malpractice*, § 13.02 (1996).

Legislatures and courts have attempted to resolve this difficulty through the adoption of the continuous treatment doctrine. The doctrine had been defined in varying ways, but the following is one formulation cited by a number of courts:

> The so-called "continuous treatment" rule as generally formulated is that if the treatment by the doctor is a continuing course and the patient's illness, injury or condition is of such a nature as to impose on the doctor a duty of continuing treatment and care, the statute does not commence running until treatment by the doctor for the particular disease or condition involved has terminated— unless during treatment the patient learns or should learn of negligence, in which case the statute runs from the time of discovery, actual or constructive.

Medical Malpractice, § 13.02[3]. This doctrine has been adopted in one form or another by a significant number of courts around the country. *See Miller v. United States*, 932 F. (2d) 301 (4th Cir. 1991); *Moore v. Averi*, 534 So. (2d) 250 (Ala. 1988); *Taylor v. Phillips*, 304 Ark. 285, 801 S.E. (2d) 303 (1990); *Comstock v. Collier*, 737 P. (2d) 845 (Colo. 1987) (en banc); *Connell v. Colwell*, 214 Conn. 242, 571 A. (2d) 116 (1990); *Ferrell v. Geisler*, 505 N.E. (2d) 137 (Ind. Ct. App. 1987); *Amrhein v. Petachenko*, 174 Mich. App. 242, 435 N.W. (2d) 10 (1988); *Fabio v. Bellomo*, 504 N.W. (2d) 758 (Minn. 1993); *Green v. Washington Univ. Medical Ctr.*, 761 S.W. (2d) 688 (Mo. Ct. App. 1988); *Ourada v. Cochran*, 234 Neb. 63, 449 N.W. (2d) 211 (1989); *Fleishman v. Richardson-Merrell Inc.*, 94 N.J. Super. 90, 226 A. (2d) 843 (App. Div. 1967); *Callahan v. Rogers*, 89 N.C. App. 250, 365 S.E. (2d) 717 (1988); *Wells v. Johenning*, 63 Ohio App. (3d) 364, 578 N.E. (2d) 878 (1989); *Wells v. Billars*, 391 N.W. (2d) 668 (S.D. 1986); *Justice v. Natvig*, 238 Va. 178, 381 S.E. (2d) 8 (1989); *Caughell v. Group Health Coop.*, 124 Wash. (2d) 217, 876 P. (2d) 898 (1994) (en banc);

*Metzger v. Kalke,* 709 P. (2d) 414 (Wyo. 1985).

In this case, we need not decide whether to adopt the continuous treatment doctrine. If we chose to adopt it, the formulation of the doctrine would include a discovery exception, as has been recognized by many courts. *See Anderson v. Short,* — S.C. —, —, 476 S.E. (2d) 475 (1996). Because Preer falls under this discovery exception, the doctrine would be of no assistance to him; therefore, our adoption of the doctrine is unnecessary under the present facts.

■ The trial court ruled that Preer knew or reasonably ought to have discovered his cause of action as late as March 27, 1990. We agree. The record reveals that Preer, an educated and sophisticated individual,[1] was well aware of his addiction to Vicodin by March 1990, as indicated by his own statements and by Mims's medical notes evidencing the counselling he was giving Preer.[2] Because Preer had knowledge of his addiction, and, hence, knowledge of Mims's negligence, by March 1990, the statute of limitations began running at that time, and any action after March 1993 would be barred. Preer brought this action on April 29, 1993; accordingly, he is barred by the statute of limitations. *See Wilson v. Shannon,* 299 S.C. 512, 386 S.E. (2d) 257 (Ct. App. 1989) (Facts actually known by plaintiff were sufficient to put a person of common knowledge and experience on notice that doctor had improperly prescribed Valium.).

### B. *Loss of Consortium*

Mrs. Preer has also appealed, arguing that the trial court erred in applying the limitations period of her husband's mal-

---

[1] Preer was a minister of three churches, had his Master's Degree in divinity and a Master's Degree in counseling psychology, was an admissions counselor, teacher, and head of the psychology department at Orangeburg-Calhoun Regional Technical Center.

[2] *See* R. p. 378 (11-27-89: "Have once again talked to him [Preer] about the use of Vicodin more as a psychological crutch than as any real need being present. Talked to him about development of physiological addiction if not careful with the Vicodin. . . ."); R. p. 378 (11-28-89: "I gave him Vicodin 10 today, counseled him again at length about this and if this problem persist[s], then he and I are going to have to talk about getting him in a program for rehabilitation."); R. p. 377 (1-4-90: "He and I had another long counselling session about the Vicodin. . . ."); R. p. 379 (1-16-90: "I told him I really thought he had developed both a physiological and a psychological dependency on the Vicodin and that we were going to have no choice but to taper him off even if it created a good bit of anxiety for him."); R. p. 381 (2-19-90: "I told him . . . that

practice claim to her loss of consortium action. The trial court reasoned that because the husband's action was barred, so was the wife's derivative claim.

Under South Carolina law, unlike that of some other states, loss of consortium is an independent action, not derivative. *See* S.C. Code Ann. § 15-75-20 (1976) ("Any person may maintain an action for damages arising from an intentional or tortious violation of the right to the companionship, aid, society and services of his or her spouse."); *Hiott v. Contracting Servs.*, 276 S.C. 632, 281 S.E. (2d) 224 (1981) (where husband instituted a personal injury action and wife, an action for loss of consortium, trial court erred in granting a stay on wife's action while her husband's action was pending on appeal); *Priester v. Southern Ry. Co.*, 151 S.C. 433, 149 S.E. 226 (1929) (directed verdict against wife, because of her contributory negligence in a federal action, did not bar husband's cause of action for loss of consortium in state court); *Page v. Crisp*, 303 S.C. 117, 399 S.E. (2d) 161 (Ct. App. 1990) (where wife brought personal injury action and husband instituted a suit for loss of consortium, the claims involved two separate lawsuits).

Although loss of consortium is an independent action, case law has held that the right of action does not accrue until the loss of the services, society and companionship of the spouse has actually occurred, which has been defined as the point when the spouse sustained the injuries. *See Berry v. Myrick*, 260 S.C. 68, 194 S.E. (2d) 240 (1973). Under facts strikingly similar to those of the present case, *Brown v. Finger*, 240 S.C. 102, 124 S.E. (2d) 781 (1962) held

even if he is not physiologically addicted to Vicodin that he is psychologically dependent upon it."); R. p. 381 (2-20-90: "I explained to him at this point I was really concerned that he might have a problem with Vicodin out and out addiction. . . ."); R. p. 384 (2-27-90: "I talked with patient at length today and got out the PDR [Physician's Desk Reference] for him and showed him the warnings about Vicodin and about drug dependence. . . ."); R. p. 443 (2-28-90: "I [Preer] write this letter to tell you [Mims]—to plead with you, please don't put pressure on me about the Vicodin. I have got to weather this storm, but I need you and the medicine. I am also aware of the temptation, indeed, the very real danger of getting habituated in this time of crisis. Being aware of it is half the battle."); R. p. 388 (3-27-90: "I [Mims] had a long talk with him today about physical addiction with withdrawal. . . . I talked to him about the way he finds excuses to take extra Vicodin instead of seeing if he can't deal with stress without it. I told him that most doctors would label him as being addicted or physically dependent.").

that the husband's claim for loss of consortium did not accrue until the wife became addicted to the use of narcotic drugs. In *Brown,* the husband asserted a loss of consortium claim against his wife's physician whose wrongful administration of narcotic drugs had caused the wife to become addicted. The Court held that because there was conflicting testimony whether the wife became addicted during the statute of limitations period, a jury issue was presented whether the action was barred.

Because the trial court improperly determined that loss of consortium is a derivative action, it did not reach the question of when the action accrued, or when it was discovered or may have been discovered by the exercise of reasonable diligence.[3] Thus, we reverse this portion of the order and remand.

## CONCLUSION

For the foregoing reasons, the order of the trial court is AFFIRMED IN PART; REVERSED IN PART.

FINNEY, C.J., MOORE, WALLER, and BURNETT, JJ., concur.

---

[3] We note there is some evidence in the record that Mrs. Preer did, in fact, have knowledge of her husband's addiction, as early as December 1989. Dr. Mims wrote in his medical notes: "I talked to him [Preer] about the situation, with him using the Vicodin, just briefly with his wife." (R. p. 377). However, because Mrs. Preer testified that she did not know of her husband's addiction until he entered the drug treatment facility in October 1991, there exists conflicting evidence. Accordingly, we must remand this matter.