580 S.E.2d 109

**Patricia L. HARRISON, as Guardian ad Litem for her Ward, James Lennon McLean, Jr., Petitioner,**

v.

**Joseph J. BEVILACQUA, Jaime E. Condom, Betty R. Guerry and South Carolina Department of Mental Health, Respondents.**

No. 25631.

Supreme Court of South Carolina.

Heard Sept. 19, 2002.

Decided April 28, 2003.

Arthur K. Aiken, of Hammer, Hammer, Carrigg & Potterfield; and Rebecca M. Monroy, of Collins and Lacy, P.C., both of Columbia, for Petitioner.

Andrew F. Lindemann and William H. Davidson, II, of Davidson, Morrison, & Lindemann, P.A., of Columbia; for Respondents.

Justice WALLER:

Petitioner Patricia Harrison, guardian ad litem for James Lennon McLean, Jr. (McLean), sued respondent South Carolina Department of Mental Health (the Department) for

professional negligence.[1]  The jury found in favor of petitioner but awarded damages in the amount of only $1.00.  Petitioner appealed, and in an unpublished decision, the Court of Appeals affirmed.  *Harrison v. Bevilacqua,* Op. No.2000 UP 441 (S.C. Ct.App. filed June 13, 2000).  We granted the petition for a writ of certiorari to review the Court of Appeals' decision, and we now affirm.

## FACTS

McLean is a diagnosed schizophrenic.  He was involuntarily committed to Crafts–Farrow State Hospital (run by the Department) in 1982.  He remained in the Department's continuous care until his discharge on March 6, 1995.  While in the hospital, McLean resided in a locked ward.  He had a very small room, but it was locked during the day.  McLean had lobby privileges, but he declined yard privileges.

One day while in the hospital lobby, McLean saw some representatives from an organization called Protection and Advocacy for the Handicapped.  He told them he wanted to be discharged so they became involved in his case.  In 1994, after being contacted by Protection and Advocacy, petitioner was appointed guardian ad litem for McLean.  In March 1994, all parties agreed at a probate court hearing that McLean could be released from the Department's care pending a home study.  Eventually, McLean did go home where he has 24–hour, one-on-one care.

While in the hospital, McLean's estate paid for his care.  At the time of the probate court hearing in 1994, McLean's assets, both cash and real estate, were valued at over $1 million.

At trial, petitioner attempted to prove that the Department had been negligent because McLean: (1) had been confined in the hospital too long;  (2) should not have resided in a locked ward;  and (3) had been improperly medicated.  In her complaint, which was filed on June 1, 1995, petitioner alleged that the Department should have discharged McLean as early as October 1983.  Other allegations included that the Depart-

---

1.  Petitioner sued the individual respondents for various causes of action all of which were disposed in their favor on a directed verdict motion. She did not appeal the directed verdict.

ment failed to follow its own Level of Care reports which, at various times, recommended McLean's transfer to an open ward or a community facility or his home.

There was conflicting expert testimony on the allegations of negligence. Regarding damages, petitioner presented undisputed evidence of how much McLean paid the Department for his care.[2] McLean did not testify, and there was no evidence admitted regarding mental anguish or pain and suffering. The jury found in favor of petitioner but only awarded $1.00 in damages. The trial court denied petitioner's motions for a new trial nisi additur, JNOV, or new trial absolute. On appeal, the Court of Appeals affirmed.

## ISSUES

1. Should the Court adopt the continuous treatment rule or the doctrine of continuing tort to determine that McLean's causes of action accrued when his treatment ended on March 6, 1995, his discharge date?

2. Did the Court of Appeals err in affirming the trial court's application of S.C.Code Ann. § 15–3–40, the tolling statute for disability?

3. Did the Court of Appeals err in affirming the denial of petitioner's motion for a new trial absolute based upon the $1.00 verdict?

## 1. CONTINUOUS TREATMENT/CONTINUING TORT RULE

Petitioner asserts that McLean's claims are of a continuous character given the continuing treatment he received over a 13–year period. She therefore argues that this Court should adopt the continuous treatment rule, or the doctrine of continuing tort, to find McLean's causes of action accrued at the termination of his treatment by the Department, i.e., the date of discharge, March 6, 1995.

---

2. As will be further discussed below, petitioner was restricted in the presentation of evidence. Therefore, the amount of damages presented to the jury represented expenses from June 1, 1990, through December 1, 1994. According to petitioner, this amount is $129,885.00.

Prior to trial, the Department moved for summary judgment on the basis of the statute of limitations. The Department argued that petitioner's allegations began in October 1983 yet the complaint was not filed until 1995, and therefore the action was time-barred. Petitioner contended that because this was a "continuous tort," or pursuant to the "continuous treatment rule," the statute did not begin to run until McLean was discharged. Alternatively, petitioner argued the tolling statute for disability, S.C.Code Ann. § 15–3–40 (Supp. 2001), would allow her to "go back at least five years from the date of filing ... in pursuing this claim." The trial court decided § 15–3–40 would apply; it therefore ruled petitioner could not present any evidence of negligence which occurred more than five years prior to the filing of the complaint. As a result, the only evidence of negligence presented at trial was related to events after June 1, 1990.

Petitioner's suit for negligence against the Department arises under the South Carolina Tort Claims Act; the applicable statute of limitations reads as follows in pertinent part: "Except as provided for in Section 15–3–40, any action brought pursuant to this chapter is forever barred unless an action is commenced within two years after the date the loss was or should have been discovered...." S.C.Code Ann. § 15–78–110 (Supp.2001). The statute, however, is tolled if the plaintiff is under a disability. *See* § 15–3–40. Section 15–3–40 provides:

If a person entitled to bring an action ... under Chapter 78 of this title ... is at the time the cause of action accrued either:

(1) within the age of eighteen years; or

(2) **insane;**

the time of the disability is not a part of the time limited for the commencement of the action, **except that the period within which the action must be brought cannot be extended:**

(a) **more than five years** by any such disability, except infancy; nor

(b) in any case longer than one year after the disability ceases.

§ 15–3–40 (emphasis added).

Neither the trial court nor the Court of Appeals stated exactly when petitioner's claims accrued. Petitioner argues that the proper date is March 6, 1995, when McLean's treatment by the Department ended. The Court of Appeals, however, declined to adopt the continuous treatment rule, or the continuing tort doctrine, stating that the power to adopt them "lies within the exclusive domain of our supreme court or legislature." *Harrison, supra*. The Court of Appeals upheld the trial court's application of section 15–3–40 and its decision "limiting [petitioner's] claims to the five years preceding the filing of her complaint." *Id.*

In *Preer v. Mims*, 323 S.C. 516, 476 S.E.2d 472 (1996), this Court recognized that the continuous treatment rule had been adopted "by a significant number of courts around the country." *Id.* at 519, 476 S.E.2d at 473. The rule can be summarized as follows:

The so-called "continuous treatment" rule as generally formulated is that if the treatment by the doctor is a continuing course and the patient's illness, injury or condition is of such a nature as to impose on the doctor a duty of continuing treatment and care, the statute does not commence running until treatment by the doctor for the particular disease or condition involved has terminated—unless during treatment the patient learns or should learn of negligence, in which case the statute runs from the time of discovery, actual or constructive.

*Id.* (quoting David W. Louisell & Harold Williams, Medical Malpractice, § 13.02[3] (1996)); *see also Anderson v. Short*, 323 S.C. 522, 524–25, 476 S.E.2d 475, 476–77 (1996).

In both *Preer* and *Anderson*, the Court stressed that if the continuous treatment rule were adopted as the law in South Carolina, it would contain the discovery exception, as outlined above. Because in both those cases the discovery exception would have precluded the plaintiffs' claims, and thus they would not have benefited from the adoption of the continuous treatment rule, the Court expressly declined to adopt the rule. *Id.*

The Department argues McLean likewise would not benefit from the rule because he should have discovered the alleged negligence. However, we agree with petitioner that it is not reasonable to expect McLean a diagnosed, institutionalized schizophrenic who has been adjudged to be incompetent—to have been able to discover negligent psychiatric treatment. Therefore, we are faced with the issue of whether to adopt the continuous treatment rule.

"There are a number of policy considerations behind the 'continuous treatment' rule;"[3] however, most often, application of the rule is justified by reasoning that, without such a rule, a plaintiff would be required to bring suit against his or her physician before treatment is even terminated. *See, e.g., Tullock v. Eck,* 311 Ark. 564, 845 S.W.2d 517, 519 (1993) (noting "the most often stated rationale" for the rule is that "the patient should not be required to interrupt the treatment to bring suit against the physician because a statute of limitations is about to run."); *Cooper v. Kaplan,* 78 N.Y.2d 1103, 578 N.Y.S.2d 124, 585 N.E.2d 373, 374 (1991) ("The premise underlying the doctrine is that a plaintiff should not have to interrupt ongoing treatment to bring a lawsuit, because the doctor not only is in a position to identify and correct the malpractice, but also is best placed to do so."). Yet this justification would be undermined by the discovery exception to the rule, which would be part of the rule were we inclined to adopt it. *See Preer, supra; Anderson, supra.* Surely, a patient could only interrupt treatment if she had (or should have) discovered the negligence.

As for other reasons for the rule, the Court of Appeals for the Fourth Circuit has stated that the "continuous treatment doctrine is based on a patient's right to place trust and confidence in his physician." *Otto v. Nat'l Inst. of Health,* 815 F.2d 985, 988 (4th Cir.1987); *accord Haberle v. Buchwald,* 480 N.W.2d 351, 355 (Minn.Ct.App.1992) (the rule is based on the policy "the patient must repose reliance upon his physician in the completion of the course of curative treatment, a relationship of trust which inhibits the patient's ability to discover acts of omission or commission constituting malpractice."). Addi-

---

**3.** David W. Louisell & Harold Williams, Medical Malpractice, § 13.02[3] (2002) (footnote omitted).

tionally, "[a] 'practical reason' for this termination of treatment rule is that 'actionable treatment does not ordinarily consist of a single act or, even if it does, it is most difficult to determine the precise time of its occurrence.' " *Haberle*, 480 N.W.2d at 354–55. Finally, basic tort principles of fairness and deterrence also provide justifications for the rule. *See* Melanie Fitzgerald, Comment, *The Continuous Treatment Rule: Ameliorating the Harsh Result of the Statute of Limitations in Medical Malpractice Cases*, 52 S.C. L.Rev. 955, 966–67 (2001).

The primary argument against adoption of the continuous treatment rule is that it offends the clear policy set by the Legislature in its adoption of statutes of limitations and statutes of repose. *See id.* at 965–66 (primarily discussing statutes of limitations). Indeed, respondents maintain that adoption of the rule would be "entirely inconsistent" with the six-year statute of repose for medical malpractice actions. *See* S.C.Code Ann. § 15–3–545 (Supp.2001).

Section 15–3–545(A) provides that:

In any action ... to recover damages for injury to the person arising out of any medical, surgical, or dental treatment, omission, or operation by any licensed health care provider ... acting within the scope of his profession must be commenced **within three years from the date of the treatment, omission, or operation giving rise to the cause of action or three years from date of discovery or when it reasonably ought to have been discovered, not to exceed six years from date of occurrence, or as tolled by this section.**

(Emphasis added). In *Langley v. Pierce*, 313 S.C. 401, 438 S.E.2d 242 (1993), we discussed this section and stated the following:

Subsection (D) of 15–3–545 provides a limited tolling provision, applicable only to minors. Inclusion of the phrase **"or as tolled by this section"** in subsection (A) clearly indicates that the **only** tolling of § 15–3–545(A) intended by the legislature is that contained in subsection (D).

Moreover, this Court has recognized that the six-year repose provision in § 15–3–545 "constitutes an outer limit beyond which a medical malpractice claim is barred, regard-

less of whether it has or should have been discovered."
*Hoffman v. Powell,* 298 S.C. 338, 339, 380 S.E.2d 821, 821
(1989).

*Id.* at 403, 438 S.E.2d at 243 (emphasis in original). We
further noted that " 'a statute of repose is typically an **abso-
lute time limit beyond which liability no longer exists and
is not tolled for any reason** because to do so would upset the
economic balance struck by the legislative body.' " *Id.* at 404,
438 S.E.2d at 243 (emphasis added, citations omitted).

■ After careful consideration, it is our opinion the contin-
uous treatment rule should not be judicially adopted. *See id.*
(statute of repose is an absolute time limit not tolled for any
reason). We note the instant case implicates not only the
general medical malpractice six-year repose statute, but also
the repose portion of the disability tolling statute, section 15–
3–40, which provides for an extension of the statute of limita-
tions by five years when the plaintiff is insane. Hence, under
the peculiar facts of this case, application of the continuous
treatment rule would infringe upon two areas which the
Legislature has spoken on regarding **absolute** limitations: (1)
medical malpractice; and (2) delay of commencement of action
due to disability.

Put simply, we find judicial adoption of the continuous
treatment rule would run afoul of the absolute limitations
policy the Legislature has clearly set via the statutes dis-
cussed above. *See Hecht v. First Nat. Bank & Trust Co.* 208
Kan. 84, 490 P.2d 649, 656 (1971) (describing other states'
adoption of the continuous treatment rule as "a judicial effort
to soften the harshness of the statutory accrual rule" and
refusing to judicially legislate in this area). Certainly, this is
an area where the Legislature can create statutory law if it so
chooses.[4]

---

4. For example, Texas' medical malpractice statute of limitations ex-
pressly provides the last date of treatment as the triggering date if the
treatment is the subject of the claim. *See* Texas Rev. Civ. Stat. Ann. art.
4590i § 10.01. ("Notwithstanding any other law, no health care liability
claim may be commenced unless the action is filed within two years
from the occurrence of the breach or tort **or from the date the medical
or health care treatment that is the subject of the claim** or the
hospitalization for which the claim is made **is completed** ....") (em-
phasis added).

■ Citing Georgia law, petitioner also argues the Court should adopt the continuing tort doctrine. We disagree.

Under Georgia law, the doctrine of continuing tort:

applies "where any negligent or tortious act is of a continuing nature and produces injury in varying degrees over a period of time." ... Under this theory, the statute of limitation does not begin to run "until such time as the continued tortious act producing injury is eliminated."

*Mears v. Gulfstream Aerospace Corp.*, 225 Ga.App. 636, 484 S.E.2d 659, 664 (1997) (citations omitted). However, the Georgia Court of Appeals has stated that the "continuing tort" theory is inapplicable to actions for medical malpractice "since it would nullify the intent of the General Assembly that, after five years, no medical malpractice action could be brought, even when a disability attaches to toll the running of the statute because the statute of repose abolishes any action five years after the negligent or wrongful act or omission." *Charter Peachford Behavioral Health Sys. v. Kohout*, 233 Ga.App. 452, 504 S.E.2d 514, 521 (1998). Thus, for the same reasons we reject adoption of the continuous treatment rule, Georgia has rejected application of its own continuous tort theory to medical malpractice claims. Accordingly, we find petitioner's argument on the continuing tort doctrine unavailing.

## 2. APPLICATION OF SECTION 15–3–40

■ Petitioner argues that the trial court erred in applying section 15–3–40, the disability tolling statute, to bar McLean's claims related to events before June 1, 1990. Specifically, petitioner contends that the causes of action did not accrue until March 6, 1995, the date of McLean's release from the hospital.

■ Because we decline to adopt the continuous treatment rule, there is no merit to petitioner's argument that the date of accrual is March 6, 1995. Furthermore, respondents correctly point out that it was petitioner's own "alternative" argument to the trial court to apply section 15–3–40. Therefore, petitioner cannot now complain the trial court erred when it took her own suggestion. *Cf. Ex parte McMillan*, 319

S.C. 331, 461 S.E.2d 43 (1995) (party cannot acquiesce to issue at trial and then complain on appeal).[5]

### 3. NEW TRIAL ABSOLUTE

■ The jury returned a verdict in petitioner's favor but awarded only $1.00 damages. Petitioner contends this is grossly inadequate in light of the $129,885.00 McLean paid to the Department from June 1, 1990 to December 1, 1994. Petitioner argues that because she presented this uncontested evidence of damages, the trial court erred in failing to grant the new trial absolute motion based on inadequate damages. We disagree.

■ "If the amount of the verdict is **grossly** inadequate or excessive so as to be the result of passion, caprice, prejudice, or some other influence outside the evidence, the trial judge must grant a new trial absolute." *O'Neal v. Bowles,* 314 S.C. 525, 527, 431 S.E.2d 555, 556 (1993) (emphasis in the original). The jury's determination of damages, however, is entitled to substantial deference. *See, e.g., Pelican Bldg. Ctrs. of Horry–Georgetown, Inc. v. Dutton,* 311 S.C. 56, 427 S.E.2d 673 (1993). "The decision to grant a new trial is left to the sound discretion of the trial court and ordinarily will not be disturbed on appeal." *Rush v. Blanchard,* 310 S.C. 375, 380, 426 S.E.2d 802, 805 (1993).

---

5. We note the Court of Appeals addressed this issue and concluded the trial court correctly limited petitioner's claims to five years preceding the filing of the complaint. The Court of Appeals held the express language of section 15–3–40 "reflects a clear legislative intent to set a **five year limit** for the commencement of tort actions against the state by a plaintiff who is laboring under a disability other than infancy." *Harrison, supra* (emphasis added). We disagree with the Court of Appeals' interpretation of section 15–3–40. The express language of the statute allows the time for commencement of an action to be "extended" by a maximum of five years. Thus, an insane plaintiff would apparently have seven years from discovery to bring a negligence action under the Tort Claims Act. *See* §§ 15–78–110, 15–3–40; *see also Fricks v. Lewis,* 26 S.C. 237, 1 S.E. 884 (1887). We note, however, if the action is one for medical malpractice, there is also the six-year statute of repose. *See* § 15–3–545. Consequently, it is unclear how this statute would interact with the seven years allowed by sections 15–78–110 and 15–3–40. In any event, because these questions have not been raised by the parties, they need not be resolved for disposition in the instant case.

The Court of Appeals decided there was "no way to determine the basis for the jury's decision in this case as no special interrogatories were prepared" and three different theories of negligence were presented. Specifically, the Court of Appeals stated as follows:

It is conceivable that the jury believed the Department properly cared for McLean and released him at the appropriate time, but that he should have been placed in an open ward. Under such a verdict, the jury could have reasonably valued McLean's actual damages at $1.00 because the evidence does not prove that the relative freedom of the open ward was of much value to him.

Alternatively, the Court of Appeals noted that because McLean requires constant care, the jury could have determined that "McLean received good value for" the $129,885.00 he paid the Department.

We agree with the Court of Appeals' analysis on this issue and find the amount of the verdict is not grossly inadequate. Accordingly, the Court of Appeals correctly affirmed the trial court's denial of a new trial absolute. *O'Neal v. Bowles,* *supra; Pelican Bldg. Ctrs. of Horry Georgetown, Inc. v. Dutton, supra.*[6]

## CONCLUSION

We decline to adopt the continuous treatment rule or the doctrine of continuing tort. For the reasons stated above, the Court of Appeals' decision is

**AFFIRMED.**

TOAL, C.J., MOORE, BURNETT and PLEICONES, JJ., concur.

---

6. We affirm petitioner's remaining issue pursuant to Rule 220(b)(1), SCACR and the following authority: *Otis Elevator, Inc. v. Hardin Const. Co. Group, Inc.,* 316 S.C. 292, 450 S.E.2d 41 (1994) (absent a showing of prejudice, an appellate court will not reverse for an alleged error in the exclusion of evidence).